IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20090264-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (January 6, 2012) |
| Gary L. Welborn, | ) | |
| | ) | 2012 UT App 5 |
| Defendant and Appellant. | ) | |

-----

Eighth District, Vernal Department, 031800339, 031800159
The Honorable A. Lynn Payne

Attorneys:     Scott L. Wiggins, Salt Lake City, for Appellant
               Mark L. Shurtleff and Brett J. DelPorto, Salt Lake City, for Appellee

-----

Before Judges Davis, Roth, and Christiansen.

ROTH, Judge:

¶1     Gary L. Welborn appeals the sentence of mandatory imprisonment imposed after he pleaded guilty to aggravated sexual abuse of a child, a first degree felony, *see* Utah Code Ann. § 76-5-404.1(4)-(5) (2008).[1]  Welborn asserts that the sentencing court committed plain error in interpreting Utah Code section 76-5-406.5 (the probation provision) to require imprisonment and that his trial counsel provided ineffective assistance by failing to assert that the probation provision allows an intermediate

---

1.  Welborn was sentenced in 2004.  Because the relevant provisions of the pertinent statutes have not been substantively amended, we cite to the current version of the code.

sanction between probation and imprisonment. Welborn also contends that his counsel was ineffective in failing to present critical witnesses and documentary evidence at sentencing. We affirm.

## I. Statutory Interpretation

¶2 When a person is convicted of aggravated sexual abuse of a child, "[i]mprisonment . . . is mandatory in accordance with [s]ection 76-3-406." *Id.* § 76-5-404.1(8). Section 76-3-406 reemphasizes the imprisonment mandate by prohibiting any action by the sentencing judge that would "in any way shorten the prison term" and identifying the probation provision as the sole exception to mandatory imprisonment.[2] *See id.* § 76-3-406 (Supp. 2011). And the probation provision itself defines the exception in very narrow terms, permitting the sentencing court to "suspend execution of sentence and consider probation to a residential sexual abuse treatment center *only if* all of [twelve enumerated] circumstances are found by the court to be present . . . ." *Id.* § 76-5-406.5(1) (2008) (emphasis added). Even if the defendant proves all the required circumstances, the court may then only suspend the prison sentence if "considering the circumstances of the offense . . . and considering the best interests of the public and the child victim, [it] finds probation to a residential sexual abuse treatment center to be proper." *Id.* The defendant has the burden of proving the circumstances required to permit the sentencing court's consideration of probation. *See id.* § 76-5-406.5(5) (placing the burden on the defendant to show by a preponderance of the evidence that all twelve enumerated circumstances are present).

¶3 The district court found that Welborn had failed to bear his burden of demonstrating that all twelve of the required circumstances were present and therefore concluded that probation in lieu of mandatory imprisonment was not an available

---

2.      Section 76-3-406 states,

> *[E]xcept as provided in [the probation provision]*, probation shall not be granted, the execution or imposition of sentence shall not be suspended, the court shall not enter a judgment for a lower category of offense, and hospitalization shall not be ordered, the effect of which would in any way shorten the prison sentence for any person who commits . . . a first degree felony involving . . . aggravated sexual abuse of a child . . . .

Utah Code Ann. § 76-3-406(12) (Supp. 2011) (emphasis added).

sentencing option. Welborn asserts that the court erred when it interpreted the probation provision to limit the alternatives to prison to only probation to a residential sexual abuse treatment center. To support this contention, Welborn argues that the probation provision does not expressly prohibit the imposition of a sentence "somewhere between outright probation as dictated by the terms of the [probation provision] and the prison term [mandated by the aggravated sexual abuse of a child statute]."

¶4     Welborn did not challenge the district court's interpretation of the probation provision below but contests it on appeal on the grounds of plain error and ineffective assistance of counsel. *See generally State v. Lee*, 2006 UT 5, ¶ 24, 128 P.3d 1179 (listing plain error and ineffective assistance of counsel as exceptions to the preservation requirement). Ordinarily, when we review a district court's interpretation of a statute for plain error, we consider whether "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). Welborn's trial counsel, however, agreed with the court's interpretation of the probation provision:

> THE COURT: Well, and correct me if I'm wrong, but as I read the statute, . . . [it] requires a term of imprisonment except if the defendant proves the factors under [the probation provision]; and he must prove each of those factors. Are we agreed upon that?
>
> [DEFENSE COUNSEL]: Yes, your Honor.

The court then found that several criteria had not been established by a preponderance of the evidence. *See generally* Utah Code Ann. § 76-5-406.5(5). Consequently, the court informed trial counsel, "[A]s I see things at this time, there's no use in you arguing for probation where the statute doesn't allow it at this point, based upon my findings." Counsel again agreed, stating, "I understand that," and indicated that the only issue he would like to address was "whether or not the term will be consecutive or concurrent." Thus, any error by the district court in interpreting the probation provision was invited, and we do not review it, even under the plain error doctrine. *See generally State v. Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171 ("[U]nder the doctrine of invited error, we have declined to engage in even plain error review when counsel, either by statement or act, affirmatively represented to the [trial] court that he or she had no objection to the [proceedings]." (second and third alterations in original) (internal quotation marks omitted)).

¶5    "Invited error does not, however, preclude our review of a claim of ineffective assistance of counsel." *State v. Sellers*, 2011 UT App 38, ¶ 13, 248 P.3d 70. To succeed on a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A defendant has not established ineffective assistance if he fails to demonstrate that both elements have been met. *See State v. Millard*, 2010 UT App 355, ¶ 15, 246 P.3d 151 ("[I]t is not necessary to address both components of the inquiry if [Defendant] makes an insufficient showing on one." (second alteration in original) (internal quotation marks omitted)). "To satisfy the first part of the test, defendant must overcome the strong presumption that [his] trial counsel rendered adequate assistance." *State v. Ott*, 2010 UT 1, ¶ 22, 247 P.3d 344 (alteration in original) (internal quotation marks omitted). The prejudice component can be shown by demonstrating that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Millard*, 2010 UT App 355, ¶ 14 (internal quotation marks omitted); *see also State v. Chacon*, 962 P.2d 48, 51 (Utah 1998) (stating that prejudice must be "a demonstrable reality and not a speculative matter" (internal quotation marks omitted)).

¶6    According to Welborn, trial counsel was deficient because he did not argue to the sentencing court that the probation provision, "by virtue of its plain language, leaves open the possibility of the court imposing something short of a complete suspension of the sentence and probation[, i]n other words, . . . a sentence somewhere between a total suspension of the prison term and outright probation to a residential sexual abuse treatment center." Although Welborn alludes to an intermediate option in his briefing, he never identifies what form it might take or points us to any authority to support his contention. At oral argument, he suggested that one such option would be partial suspension of the prison sentence, that is, a sentence of one year in jail, followed by probation. Our reading of the plain language of the relevant statutes, as well as our understanding of the statutory relationship between a prison sentence and probation, however, leads us to a contrary conclusion.

¶7    The aggravated sexual abuse of a child statute punishes a convicted defendant with mandatory imprisonment in accordance with section 76-3-406. *See* Utah Code Ann. § 76-5-404.1(8) (2008). Section 76-3-406 then identifies all the usual options available to the court at sentencing and expressly prohibits any deviation from the mandatory imprisonment requirement unless provided for by the probation provision. *See id.* § 76-3-406 (Supp. 2011). And the plain language of the probation provision clearly permits only a single alternative to mandatory imprisonment:

> In a case involving a conviction for . . . aggravated sexual abuse of a child, the court *may suspend execution of sentence and consider probation to a residential sexual abuse treatment center* only if all of [twelve enumerated mitigating] circumstances are found by the court to be present and the court in its discretion, considering the circumstances of the offense, including the nature, frequency, and duration of the conduct, and considering the best interests of the public and the child victim, finds probation to a residential sexual abuse treatment center to be proper . . . .

*Id.* § 76-5-406.5(1) (emphasis added). The probation provision simply does not identify any alternative to mandatory imprisonment other than "probation to a residential sexual abuse treatment center." *Id.*

¶8    Indeed, Utah's statutory approach to sentencing plainly limits a district court's choices. Generally, "a court may sentence a person convicted of an offense to any one . . . sentence[] or combination of" sentences, including imprisonment or "probation unless otherwise specifically provided by law."[3] Utah Code Ann. § 76-3-201(2)(c)-(d) (Supp. 2011). Further, "[o]n a plea of guilty, . . . the court may, after imposing [a prison] sentence, suspend the execution of the sentence and place the defendant on probation." Utah Code Ann. § 77-18-1(2)(a) (Supp. 2011). Thus, the options available to a sentencing court under the circumstances of this case are effectively binary: imprisonment for the prescribed term or suspension of the prison sentence in favor of probation to a residential sexual abuse treatment center. While a sentencing court has a number of options as to how to craft probation (including a period of incarceration at a jail[4]),

---

3. The statute also provides for imposition of "a fine," "removal or disqualification from public or private office," "life in prison without parole," and "death" as alternative sentencing options, none of which are relevant to the circumstances of this case. *See* Utah Code Ann. § 76-3-201(2)(a)-(b), (e)-(f) (Supp. 2011).

4. Welborn's counsel suggested at oral argument that an intermediate alternative between prison and probation could involve the sentencing court suspending all but a year of the prison sentence. A stint in jail is a common component of probation, however, and there is no provision in Utah law that allows a sentencing court to suspend a portion of a prison sentence. Welborn's suggested alternative, therefore, really amounts to no more than probation with a jail component, something that the

(continued...)

Welborn's interpretation of the statutory scheme as permitting a third alternative between prison and probation is simply not plausible. For the type of crime Welborn was convicted of, the district court's discretion to suspend imprisonment and place him on probation is constrained, as "specifically provided by law," *see* Utah Code Ann. § 76-3-201(2)(c), to a single kind of probation (involving residential sexual offender treatment) that is available only if all the statutory conditions are met, *see id.* § 76-5-406.5(1). Because we conclude that Welborn's claim that the probation provision permits a third sentencing option between imprisonment and probation is not supported by the language of the relevant statutes, any objection by his trial counsel to the district court's interpretation of the statute on this basis would have been futile. Failure to make such an objection therefore could not constitute deficient performance. *See generally State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

## II. Evidence at Sentencing

¶9 We now turn to Welborn's contention that his trial counsel was ineffective because he failed to present certain evidence at sentencing, including the testimony of four witnesses and two reports that he claims would have aided him in establishing the mitigating circumstances necessary to be eligible for probation. The sentencing court held that Welborn failed to establish, by a preponderance of the evidence, the following three mitigating factors:

> (a) the defendant did not use a weapon, *force, violence, substantial duress or menace, or threat of harm, in committing the offense or before or after committing the offense, in an attempt to frighten the child victim or keep the child victim from reporting the offense*;

> (b) the defendant did not cause bodily injury to the child victim during or as a result of the offense and *did not cause the child victim severe psychological harm*;

---

4. (...continued)
applicable statutes clearly prohibit, except in combination with residential sexual offender treatment and only then when all the identified conditions have been fulfilled. *See* Utah Code Ann. § 76-5-404.1(8) (2008); *id.* § 76-3-406 (Supp. 2011); *id.* § 76-5-406.5 (2008).

. . . .

(j) prior to being sentenced, the defendant has undergone a complete psychological evaluation conducted by a professional approved by the Department of Corrections and;

(i) the professional's opinion is that the defendant is not an exclusive pedophile and does not present an immediate and present danger to the community if released on probation and placed in a residential sexual abuse treatment center; and

(ii) the *court accepts the opinion of the professional*.

Utah Code Ann. § 76-5-406.5(1) (2008) (emphases added); *see also id.* § 76-5-406.5(5) (placing the burden on the defendant to establish all twelve factors by a preponderance of the evidence).

¶10    With regard to the witnesses, Welborn faults his trial counsel with failing to present the testimonies of Ted Cilwick, a private investigator; Rose Anna Miller, a social worker who worked with Welborn's family when he was a teenager; and William Gardiner and Dr. Edward Gardiner, his treatment providers at the time.  Welborn argues that had his trial counsel presented the testimony of Cilwick, whom he hired to interview potential defense witnesses, Welborn could have established that his victim had not been severely psychologically harmed as a result of the sexual abuse under subsection (1)(b).  *See id.* § 76-5-406.5(1)(b).  Welborn proffered that Cilwick would have testified about interviews he conducted with two schoolmates of the victim who had reported that she had a boyfriend, that she publicly held hands with and hugged the boyfriend, and that she was "'outgoing, upbeat, unafraid of boys, [and] talkative.'"  The victim's own therapist, however, testified at the sentencing that the victim had been "harmed severely" as a consequence of the abuse, leading her to attempt suicide on four occasions.  To rebut the testimony of the victim's therapist that she had suffered severe psychological harm, Welborn asserts that his counsel should have presented testimony from Cilwick that two of the victim's schoolmates had witnessed her acting normally.  However, there is nothing in Cilwick's proposed testimony regarding the victim's interactions with boys or her social personality that is necessarily inconsistent with her therapist's assessment that she had suffered severe psychological harm as a result of the sexual abuse.  Rather, the reports of her schoolmates amount to anecdotal, isolated

observations.  Furthermore, Cilwick is neither an expert on manifestations of psychological harm nor did he observe the victim firsthand, and the defense has not identified any portion of his proposed testimony, or any other witness's testimony, that would have established that the victim's apparently normal actions on these limited occasions were materially inconsistent in a person who had suffered severe psychological harm and attempted suicide.  Thus, his testimony, at best, would have invited the sentencing court to speculate about the victim's psychological health following the sexual abuse, and speculation cannot establish by a preponderance of the evidence that the victim had not experienced severe psychological harm from the sexual abuse.  The failure to present that testimony was therefore not prejudicial to Welborn's defense and cannot form the basis for a determination that counsel provided ineffective assistance.

¶11    Because Welborn could not establish subsection 1(b) and, for that reason, was not eligible for probation, any deficiencies in performance by trial counsel with regard to the establishment of the other mitigating factors would not be prejudicial, as they could not have changed the result.  *Cf. State v. Tryba*, 2000 UT App 230, ¶ 13, 8 P.3d 274 ("Because a defendant has the burden of meeting all twelve requirements of [the probation provision], we need not review all the criteria for eligibility if our inquiry reveals that any single requirement is not satisfied.").  *See generally State v. Millard*, 2010 UT App 355, ¶ 14, 246 P.3d 151 (defining prejudice as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (internal quotation marks omitted)).  We observe, however, that even with the additional testimonies and documentary evidence, Welborn could not have established subsections (1)(a) or (1)(j).

¶12    With respect to subsection (1)(a), Welborn claims that, if trial counsel had called Miller, his family's social worker, as a witness, he could have demonstrated that he did not use force or violence in committing aggravated sexual abuse of a child or make a threat of harm after its commission to instill fear in the victim.  *See generally* Utah Code Ann. § 76-5-406.5(1)(a).  According to Welborn, he could have rebutted a letter from his stepsister, in which the stepsister alleged that Welborn violently raped her when she was a child and he was a teenager, with Miller's testimony that neither the stepsister nor Welborn's mother had ever mentioned this incident during the years in which Miller had contact with the family.  Welborn asserts that this testimony was critical because the district court "alluded that the . . . stepsister['s letter] tipped the scale in favor of the victim's claim that force and threats had been utilized in the course of the offense."

¶13 Welborn has not established that Miller's testimony was material. First, Welborn's statement that the stepsister's letter "tipped the scale" with regard to the court's assessment of the credibility of the victim's testimony that Welborn had been violent does not appear to be supported by the record. While the judge questioned Welborn's psychologist, Dr. Ricky Hawks, about how his favorable risk assessment of Welborn might be altered were the allegations in the stepsister's letter true, the court did not mention the letter in its decision, much less indicate that it had "tipped the scale" in any way. Further, Welborn has not shown that Miller's testimony was likely to have changed the result in any event. As the district court noted, the victim's therapist had reported Welborn's threat as a motivation for the victim attempting suicide and the victim herself had reported the use of force and violence by Welborn. The court then found that it "ha[dn't] received any testimony sufficient to cause the Court to think that the burden [of demonstrating that no force or violence had been used] has been met." Miller's testimony, had it been presented, would have established only that any violent sexual act with his stepsister had not been reported; it would not have established that Welborn did not use violence with this victim many years later. Welborn, therefore, has not convinced us that even with Miller's testimony, there was a reasonable probability that the outcome would have been different. *See generally Millard*, 2010 UT App 355, ¶ 14 (requiring a showing both that counsel's performance was deficient and that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Moreover, the substance of Miller's information in this regard was set out in Dr. Hawks's testimony.

¶14 Welborn also alleges that trial counsel should have introduced the police report and the victim's medical examination report to establish that Welborn had not used force or violence with the victim. Welborn claims that the police report contains "little to no references about any threats or violence" toward the victim and that the medical examination report would have shown that the victim's genitalia and anus were normal and had no indications of trauma. The failure to introduce this evidence, however, can properly be attributed to reasonable trial strategy. The police report, for instance, detailed Welborn's abuse of the victim, including accounts of Welborn's multiple acts of rape and sodomy on the preteen child and his backhanding her when she resisted his advances on one occasion. Thus, the claim that the police report contains "little or no references about any threats of violence" is, at best, an optimistic characterization of its contents in the first place, and whatever questionable support it might have given would have to be assessed against the clearly prejudicial information it contained. The medical examination report, which was performed nearly three years after the abuse, likewise contains a litany of Welborn's sexual abuse of the victim and includes multiple

allegations of the use of violence, force, and threats by Welborn against the victim. Counsel was thus confronted with the need to balance a significant potential for prejudice against the tenuous support that negative physical findings three years after the fact might give to Welborn's claim that he used no force or violence in his sexual abuse of the victim. Counsel's decisions about whether to introduce either report therefore clearly implicate strategic judgment and cannot be gainsaid on appeal. *See generally State v. Sellers*, 2011 UT App 38, ¶ 16, 248 P.3d 70 (stating that because we assume that counsel provided adequate assistance, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" (internal quotation marks omitted)).

¶15 Welborn's final contention is that trial counsel was ineffective in failing to call his treatment providers, Dr. Edward Gardiner and William Gardiner, for the purpose of establishing subsection (1)(j), that is, that he was not an exclusive pedophile and did not present an immediate and present danger to the community if he was not imprisoned. *See* Utah Code Ann. § 76-5-406.5(1)(j) (2008). We disagree. First, Dr. Hawks's testimony related the substance of what the Gardiners' testimonies would have entailed, including their opinions that Welborn's existing treatment plan was adequately mitigating any risk he presented to the victim and the community. Second, Dr. Gardiner's progress notes were included as attachments to the presentence investigation report and were therefore available for the court's review prior to sentencing. Welborn has not demonstrated that presenting this information in testimonial form would likely have changed the result. Further, calling Dr. Gardiner to testify would have entailed obvious risk: one of the mandatory conditions of the probation provision was that the defendant have had no prior conviction for a sex offense, but Dr. Gardiner had identified, in his written communications, Welborn's juvenile conviction for a sex offense. The State had already conceded this condition in Welborn's favor because it had no evidence of such a prior offense without Dr. Gardiner's testimony; calling him as a witness at the sentencing hearing would have raised the risk that the prior sex offense would have been revealed under cross-examination. Because counsel's decisions with regard to this evidence involved striking a strategic balance between the potential benefit and the potential harm, we cannot conclude that counsel was deficient in failing to present it. *See Sellers*, 2011 UT App 38, ¶ 16.

¶16 In summary, we have declined to engage in plain error review of the district court's interpretation of the probation provision where trial counsel affirmatively represented to the court that its interpretation was correct. Moreover, trial counsel was not ineffective in failing to object to the court's interpretation because the plain language of the probation provision does not support Welborn's proposed

interpretation. Nor was counsel ineffective for failing to present additional testimony or documentary evidence to establish the mitigating factors necessary for eligibility for probation because the evidence proffered to demonstrate that the victim was not severely psychologically harmed was speculative and the failure to establish even one mitigating factor precludes suspension of sentence in favor of probation to a residential sexual abuse treatment center. We therefore affirm Welborn's sentence of five years to life in prison.

_____
Stephen L. Roth, Judge

-----

¶17    WE CONCUR:

_____
James Z. Davis, Judge

_____
Michele M. Christiansen, Judge