IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20110046-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (September 27, 2012) |
| Ronnie Cyril Sessions, | ) | |
| | ) | 2012 UT App 273 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 091902780
The Honorable Deno G. Himonas

Attorneys:     Brittany D. Enniss, Salt Lake City, for Appellant
                    Mark L. Shurtleff and Ryan D. Tenney, Salt Lake City, for Appellee

-----

Before Judges McHugh, Voros, and Roth.

McHUGH, Judge:

¶1     Ronnie Cyril Sessions appeals his convictions for one count of aggravated sexual assault, a first degree felony, *see* Utah Code Ann. § 76-5-405 (2008) (current version at *id.* (Supp. 2012)), and two counts of domestic violence in the presence of a child, class B misdemeanors, *see id.* § 76-5-109.1(2)(c) (2008) (current version at *id.* (Supp. 2012)).[1] On appeal, Sessions argues that his counsel performed ineffectively by using the defense's

_____

    [1]As discussed in greater depth in section III, Sessions asserts that the trial court improperly imposed his sentence under the 2008 version of the aggravated sexual assault statute instead of the version in effect at sentencing. *See infra* ¶¶ 40–44.

peremptory challenges in a discriminatory manner, being unable to articulate a nondiscriminatory reason for striking two of the jurors, and then failing to object to the trial court's remedy, which Sessions claims was unconstitutional. Next, he argues that trial counsel was ineffective in failing to move for a mistrial in response to the trial court's reference to a future appeal in the presence of the jury. Last, Sessions claims that the trial court imposed an improper sentence. We affirm.

BACKGROUND

¶2    The charges in this case arise out of Sessions's violent attack on his wife (Wife) in the presence of their four-year-old daughter. On March 31, 2009, during an argument, Sessions "ripped all [Wife's] clothes off" and "plunged his hand into [her] vagina." Sessions then "just started hitting [Wife] and raping [her] with his fist." Wife's adult son heard her screams and found her alone and "naked" on the floor with "blood coming down the side of her leg where her vagina is."

¶3    The State charged Sessions with one count of aggravated sexual assault and two counts of domestic violence in the presence of a child. On August 27, 2010, the parties began the process of selecting the jury. During voir dire, the trial judge asked, "Have any of you ever served on a jury involving a criminal matter?" Juror 19 responded that she had served as a juror on an assault case fifteen or twenty years previously and that the defendant in that case was found guilty. Later, Juror 19 informed the court that her niece had been sexually assaulted. In response, the trial court asked her, "Would you be able to set [your niece's sexual assault] aside . . . and render a true and correct verdict in this case?"  Juror 19 responded, "Yes." Neither party requested any further questions of Juror 19 or challenged her for cause.

¶4    Also during voir dire, the trial court asked the venire, "Do any of you feel that the testimony of someone working in law enforcement is more or less believable than anybody else?" Juror 23 raised her hand, but the court did not ask any further questions regarding this issue. Later, Juror 23 indicated that she had seen pretrial publicity, but that she could be fair and impartial despite that exposure. Neither party requested any further questions of Juror 23 or challenged her for cause.

¶5    Over the course of voir dire, the trial court struck eighteen potential jurors for cause. The attorneys then passed the remaining twenty-one potential jurors for cause,

including Jurors 19 and 23. At this point, the trial court gave the parties an opportunity to exercise their peremptory challenges. The State struck four men and one woman, and Sessions struck five women including Jurors 19 and 23. The State objected to Sessions's use of his peremptory challenges, claiming that he had exercised them in a discriminatory fashion. At that point, the trial court asked Sessions whether he realized that he did "not have the ability to strike people based upon their gender." Counsel answered, "I did not do that."

¶6 Based on its conclusion that the use of the defense's peremptory challenges to eliminate five women established a prima facie constitutional violation, the trial court asked trial counsel to articulate a gender-neutral explanation for each strike. Trial counsel provided an acceptable explanation for striking all of the jurors except for Jurors 19 and 23. With respect to Juror 19, the most detail about his reasoning that counsel could remember was that "something she said" had bothered him and he struck her based on a "gut feeling." Trial counsel also could not recall his reasons for striking Juror 23. Because he was unable to provide a legitimate nondiscriminatory reason for striking Jurors 19 and 23, the trial court determined that trial counsel had exercised the defense's peremptory challenges in a discriminatory fashion.

¶7 As a result, the court informed the State that it would "entertain a motion for a mistrial . . . or for alternative relief." The State did not seek a mistrial; instead, it suggested that the trial court reseat Jurors 19 and 23. The trial court then stated that it was "concerned, because, frankly, when you first came up here, you indicated that you did not know that you could not strike women just because they were females, correct?" Trial counsel responded, "Correct." At that point, the trial court adopted the State's suggestion and reseated the jurors. Trial counsel did not object to the remedy selected or request that the peremptory challenges he had used on Jurors 19 and 23 be reinstated. Both attorneys then passed the jury for cause and the trial proceeded to verdict. The jury, which included Jurors 19 and 23, convicted Sessions on all counts.

¶8 Prior to sentencing, Adult Probation and Parole (AP&P) prepared a Presentence Investigation Report (the PSI), indicating that Sessions could be sentenced to indeterminate terms of six years to life, ten years to life, or fifteen years to life for aggravated sexual assault. The PSI stated that "the court shall order the term of 15 years to life . . . unless aggravating or mitigating circumstances justify departures." AP&P stated that Sessions was in the "Mandatory Imprisonment Sanction category" and recommended "lengthy incarceration." Prior to sentencing, the statute in effect at the

time of the crime and referenced in the PSI was amended, adding a fourth sentencing option of three years to life in certain circumstances.

¶9      At the beginning of the sentencing hearing, the trial court stated that it had read the PSI. The parties then discussed the appropriate sentencing range for aggravated sexual assault. Sessions's counsel asked the trial court to impose a sentence of three years to life, the most lenient sentence permitted under the amended statute. In contrast, the State requested that Sessions receive the maximum sentence under both statutes of fifteen years to life. The State also argued that three years to life was "not even a possibility." The trial court indicated that "the only reduction [it was] contemplating [was] to 10 years . . . based on [Sessions's] lack of any criminal history," a sentence available under either version of the statute. At the end of the hearing, the trial court sentenced Sessions to ten years to life for aggravated sexual assault and to time served for the counts of domestic violence in the presence of a child. Sessions appeals.

ISSUES AND STANDARDS OF REVIEW

¶10      Sessions first argues that he received ineffective assistance when trial counsel used all of the defense's peremptory challenges on women, did not know that he could be asked to provide a nondiscriminatory reason for doing so, and could not recall the information provided by these jurors during voir dire. Second, Sessions argues that the trial court erred by reinstating Jurors 19 and 23 without returning the two peremptory challenges the defense had used to strike them. Sessions also argues that trial counsel was ineffective by failing to object or move for a mistrial in response. Third, Sessions argues that the trial court erred when it referred to the future appeal of the case in the presence of the jury, and that counsel was ineffective in failing to move for a mistrial in response. Finally, Sessions argues that the trial court erred in sentencing him under the prior version of the statute, that trial counsel was ineffective by failing to alert the trial court to its sentencing options, and that the sentence imposed was illegal.

¶11      All of Sessions's claims are unpreserved and are raised for the first time on appeal. Ineffective assistance of counsel claims raised for the first time on appeal are issues of law that we review for correctness. *See State v. Person*, 2006 UT App 288, ¶ 9, 140 P.3d 584. We review the claimed errors of the trial court under the doctrine of plain error. *See State v. Cram*, 2002 UT 37, ¶ 9, 46 P.3d 230 (stating that unpreserved claims may not be raised on appeal, "'unless a defendant can demonstrate that "exceptional

circumstances" exist or "plain error" occurred.'" (quoting *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346)).

ANALYSIS

I. Jury Selection Issues

¶12     We first consider Sessions's claims that trial counsel was ineffective for not successfully striking Jurors 19 and 23 and for failing to seek reinstatement of his rejected peremptory challenges. We also consider Sessions's claim that the failure to return the two peremptory strikes constituted plain error. Before we begin our analysis, we address Sessions's burden on appeal.

A. Ineffective Assistance of Counsel and Plain Error

¶13     Sessions admits that his jury selection claims are raised for the first time on appeal. As a general rule, a party may not raise issues on appeal that were not brought to the attention of the trial court. *See Holgate*, 2000 UT 74, ¶ 11. However, there are three exceptions to this preservation rule.

> When a party fails to preserve an issue for appeal, we will
> address the issue only if (1) the appellant establishes that the
> district court committed "plain error," (2) "exceptional
> circumstances" exist, or (3) in some situations, if the
> appellant raises a claim of ineffective assistance of counsel in
> failing to preserve the issue.

*State v. Low*, 2008 UT 58, ¶ 19, 192 P.3d 867 (quoting *State v. Weaver*, 2005 UT 49, ¶ 18, 122 P.3d 566; *State v. Hansen*, 2002 UT 114, ¶ 21 n.2, 61 P.3d 1062).

¶14     Sessions asks us to address his claims under the doctrines of plain error and ineffective assistance of counsel. In reviewing a trial court's decision for plain error, we consider "whether '(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful.'" *See State v. Welborn*, 2012 UT App 5, ¶ 4, 268 P.3d 881 (mem.) (alteration in original) (quoting *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993)). Additionally, to succeed on his ineffective assistance of counsel claim, Sessions

must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See generally Nicholls v. State*, 2009 UT 12, ¶ 36, 203 P.3d 976 (citing *Strickland*, 466 U.S. at 687). First, Sessions must prove "'that counsel's performance was deficient.'" *See Nicholls*, 2009 UT 12, ¶ 36 (quoting *Strickland*, 466 U.S. at 687). Second, Sessions must prove "'that the deficient performance prejudiced the defense.'" *See id*. (quoting *Strickland*, 466 U.S. at 687). If Sessions fails to establish either of these prongs, he cannot prevail on a claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687.

¶15 Thus, whether Sessions asserts his claim under the doctrine of ineffective assistance of counsel or plain error, he must show prejudice. *See State v. McCloud*, 2005 UT App 466, ¶ 16, 126 P.3d 775; *see also State v. Ellifritz*, 835 P.2d 170, 174 (Utah Ct. App. 1992) ("Failure to meet the plain error requirement of prejudice means that defendant likewise fails to meet the required showing under the ineffective assistance of counsel standard.").

B. Presumed Prejudice

¶16 Sessions advances two arguments for his position that we should presume prejudice in this case. First, he contends that trial counsel's use of the defense's peremptory challenges to remove women from the jury violated the United States Supreme Court's prohibition on discriminatory jury selection practices, resulting in structural error. Second, Sessions claims that the trial court's failure to reinstate the two peremptory challenges when Jurors 19 and 23 were reseated resulted in a disparity in the number of peremptory challenges between the defense and the prosecution that also created structural error. We consider each of these arguments in turn.

1. Use of Peremptory Challenges

¶17 Sessions has selected an unusual path to his ineffective assistance claim. He does not argue that trial counsel was ineffective in failing to challenge Juror 19 and Juror 23 for cause or for not requesting further voir dire on their impartiality. Instead, Sessions claims that trial counsel was ineffective in his failed attempt to remove Jurors 19 and 23 with the defense's peremptory challenges. In particular, Sessions asserts that because trial counsel was unaware of controlling legal authority, he was not prepared to articulate the nondiscriminatory reasons for striking them that were obvious from the voir dire record. As a result, the trial court reseated the jurors in an attempt to comply with precedent from the United States Supreme Court.

¶18    In *Batson v. Kentucky*, 476 U.S. 79 (1986), a black defendant challenged his conviction on the ground that the prosecution had improperly exercised its peremptory challenges to strike all four of the black potential jurors. *See id.* at 82–83. The United States Supreme Court agreed with the petitioner, holding that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.* at 89. In addition, the Supreme Court adopted "a three-step analytical framework" to determine "whether a litigant's use of peremptory challenges violates the Equal Protection Clause." *State v. Valdez*, 2006 UT 39, ¶ 15, 140 P.3d 1219; *see also Batson*, 476 U.S. at 95–98. "First, the opponent of the peremptory challenges must establish a prima facie case of purposeful discrimination in the selection of the petit jury." *Valdez*, 2006 UT 39, ¶ 15 (citing *Batson*, 476 U.S. at 93–97). "Second, once the opponent has established a prima facie case, the burden shifts to the proponent of the peremptory challenges to rebut the prima facie case by offering neutral, nondiscriminatory justifications for the peremptory challenges." *Id.* (citing *Batson*, 476 U.S. at 97). However, "[a] proponent cannot meet this burden by simply denying a discriminatory motive or professing good faith." *Id.* (citing *Batson*, 476 U.S. at 98). "Rather, a proponent must proffer justifications that are: (1) neutral; (2) related to the particular case to be tried; (3) reasonably specific and clear; and (4) legitimate." *Id.* (citing *Batson*, 476 U.S. at 98 & n.20). "Finally, if the proponent provides a sufficient explanation for the peremptory challenges, the trial court must determine whether the opponent of the peremptory challenges has proven purposeful discrimination." *Id.* Several years after *Batson*, the Supreme Court extended its rule and analytical framework to prohibit the use of peremptory challenges to discriminate on the basis of gender. *See J.E.B. v. Alabama*, 511 U.S. 127, 146 (1994).

¶19    Sessions argues that trial counsel was deficient for being unfamiliar with this longstanding precedent and, as a result, being unaware of the likelihood that he would be asked to provide nondiscriminatory reasons for using the defense's peremptory challenges to strike five women. According to Sessions, if trial counsel had articulated the concerns apparent from voir dire, the trial court would have rejected the State's *Batson* challenge and Jurors 19 and 23 would not have served on the jury. Sessions further contends that "structural errors in jury selection involve the use of discriminatory peremptory strikes to remove [women] . . . from a jury," and that he is therefore not required to prove prejudice. *Cf. State v. Russell*, 917 P.2d 557, 560 (Utah Ct. App. 1996); *see generally J.E.B.*, 511 U.S. at 146.

¶20 However, this is not a case where a jury selected in violation of *Batson* rendered a verdict. When the State challenged the strikes as discriminatory, the trial court determined that trial counsel had nondiscriminatory reasons for using its peremptory challenges on three of the prospective jurors and reseated Jurors 19 and 23 when trial counsel was unable to rebut the prima facie case of discrimination with respect to them. Thus, the jury that served in this case was not selected in violation of the constitutional constraints identified in *Batson*, and no structural error occurred. Rather, Sessions's claims on appeal relate to the use and subsequent confiscation of two of the defense's peremptory strikes. While these issues arise in the context of the State's successful challenge to Sessions's facially improper use of his peremptory strikes, the claims on appeal challenge the impartiality of Jurors 19 and 23, not the discriminatory composition of the jury.

### 2. Disparity in Peremptory Challenges

¶21 Next, Sessions argues that prejudice can be presumed because when the trial court reseated Jurors 19 and 23 without returning the peremptory strikes, the State was left with two more peremptory challenges than the defense. In support, Sessions relies on the Utah Supreme Court's decisions in *Carrier v. Pro-Tech Restoration*, 944 P.2d 346 (Utah 1997), and *Randle v. Allen*, 862 P.2d 1329 (Utah 1993).

¶22 In *Randle*, a civil case involving three defendants and one plaintiff, the trial court allotted each party four peremptory challenges. *See Randle*, 862 P.2d at 1332. As a result, the defendants had an aggregate of twelve peremptory challenges, but the plaintiff had only four. *See id*. After the defendants prevailed at trial, the plaintiff challenged the unequal distribution of peremptory strikes on appeal. *See id*. The supreme court agreed that the trial court had erred, holding that extra peremptory challenges should be awarded only when a substantial controversy exists between the codefendants. *See id*. at 1333–34. As Sessions correctly notes, the *Randle* court then presumed that the disparity in peremptory challenges prejudiced the plaintiff. *See id*. at 1334. However, it limited that presumption to the facts before it, stating,

> A side that has additional peremptory challenges has the opportunity to shape the jury to its advantage. Although this self-evident statement does not itself show prejudice, the size of the disparity in the peremptory challenges allowed in

> this case was significant. Requiring a party to show prejudice in such circumstances is to require the impossible.

*Id*. Thus, the supreme court held that "it is reversible error for civil or criminal litigants to be required to use peremptory challenges to remove jurors who should have been removed for cause." *See id.* In reaching that conclusion, the supreme court relied on its earlier decision in *Crawford v. Manning*, 542 P.2d 1091 (Utah 1975), which held that compelling a party "to waste [a peremptory challenge] in order to accomplish that which the trial judge should have done" constituted reversible error. *See id.* at 1093; *Randle*, 862 P.2d at 1334.

¶23     One year after *Randle* was issued, the Utah Supreme Court overruled *Crawford* in *State v. Menzies*, 889 P.2d 393 (Utah 1994). In *Menzies*, the defendant claimed that the trial court erred by failing to remove a juror challenged for cause, thereby requiring the defense to use a peremptory challenge to strike that juror.[2] *See Menzies*, 889 P.2d at 397. On appeal, the defendant relied on the supreme court's *Crawford* decision to argue that this gave the State one extra peremptory challenge and warranted a presumption of prejudice. *See id.* at 397–98. Instead, the Utah Supreme Court overruled *Crawford*, holding that the loss of a peremptory challenge does not violate the constitutional right to an impartial jury, "[s]o long as the jury that sits is impartial." *Id.* at 398. Thus, in *Menzies*, the supreme court refused to presume prejudice simply because the trial court's error created a disparity of one in the number of peremptory challenges available to each side. *See id.* at 400.

¶24     In *Carrier*, a defendant in a personal injury action relied on *Menzies* to challenge this court's decision granting the plaintiff a new trial based on a twelve-to-four disparity in the number of peremptory challenges available to defendants and the plaintiff, respectively. *See Carrier*, 944 P.2d at 349, 354. The supreme court rejected the defendant's argument that by overruling *Crawford*, the court had also overruled *Randle*. *See id.* at 354. Instead, it distinguished the decisions, explaining that "*Menzies* concerned whether prejudice should be presumed when a party is compelled to use a peremptory challenge on a panel member who should have been removed for cause," while "*Randle* presumed prejudice when a trial court grants one side too many peremptory challenges,

---

[2]The defendant in *State v. Menzies*, 889 P.2d 393, 397 (Utah 1994), also challenged four other jurors on grounds not relevant to this analysis. *See id.* at 397.

giving that side the power to shape the jury to its advantage." *See id.* While prejudice will not be presumed in the former instance, the *Carrier* court explained that the *Randle* facts "make[] a much stronger case for a presumption of prejudice." *See id.* It explained that "the harm is likely greater because of the number of jurors affected" and because "the complaining party has no opportunity to correct the consequences of the trial court's error and no grounds for arguing that any of those seated are actually removable for cause." *See id.*

¶25    Even if the trial court erred in the present case in not reinstating the defense's peremptory challenges, a question we do not decide, we are convinced that *Menzies* is controlling. Unlike in *Carrier* and *Randle*, the allocation of peremptory challenges here was even at the outset of voir dire. Indeed, each side had the opportunity to shape the jury to its advantage by using the same number of peremptory challenges during the jury selection process. It was only after that balanced use of peremptory strikes that the State raised its *Batson* challenge. Most important, the difference between the number of peremptory challenges that were successfully used by each side here is only two, while in both *Carrier* and *Randle* the defense had successfully used twelve peremptory challenges compared to the plaintiff's four. *See Carrier*, 944 P.2d at 349; *Randle*, 862 P.2d at 1332. Consequently, this case does not involve the type of significant disparity that warrants a presumption of prejudice.[3]

¶26    Accordingly, to prevail on either of his claims relating to jury selection, Sessions must establish prejudice. This requires that he show that either Juror 19 or Juror 23 was actually "partial or incompetent," *see State v. Wach*, 2001 UT 35, ¶ 24, 24 P.3d 948 (citing *State v. Menzies*, 889 P.2d 393, 398 (Utah 1994)), or that "as a result of the loss of his peremptory challenge[s] he was not able to remove another subsequently summoned juror who ultimately sat on the jury, and who was 'partial or incompetent,'" *see id.* ¶ 36 (additional internal quotation marks omitted) (quoting *State v. Baker*, 935 P.2d 503, 506

---

[3]Because we conclude that no structural error occurred, we need not consider whether a defendant's burden to show prejudice is different when raising a structural error for the first time on appeal under the doctrines of ineffective assistance of counsel or plain error. *See State v. Cruz*, 2005 UT 45, ¶ 18, 122 P.3d 543 (noting in dicta that "a defendant claiming constitutional error who did not object at trial may only argue plain error or ineffective assistance of counsel on appeal and thus must prove prejudice, even if the constitutional error claimed on appeal is structural in nature").

(Utah 1997)). Sessions has not challenged the partiality or competence of any jurors other than Juror 19 and Juror 23. Thus, his jury selection claims cannot succeed unless either Juror 19 or Juror 23 was actually biased.

C. Actual Bias

¶27     Sessions claims that Juror 19 was biased because "she held predisposed ideas about sexual assault cases partially based on her niece's experience with being a victim of sexual assault."[4] During jury selection, Sessions's trial counsel inquired of the prospective jurors, "[H]ave any of you, your family members, or friends been a victim of domestic violence or assault?" In response, Juror 19 revealed that she had "a niece [who] had been sexually assaulted." The court immediately asked Juror 19, "Would you be able to set that aside, [Juror 19], and render a true and correct verdict in this case?" Juror 19 answered with an unqualified, "Yes." Apparently satisfied, neither the trial court nor either of the parties asked any additional questions on this topic.

¶28     According to Sessions, Juror 19's response indicates actual bias. The State disagrees and argues that no actual bias was revealed, noting that even a potential juror's own "prior victimization does not mandate the juror be removed for cause." *See State v. Boyatt*, 854 P.2d 550, 553 (Utah Ct. App. 1993). The State further contends that although the past victimization of a juror (or a juror's close relative) "can raise an inference of bias," such an inference can be rebutted "by the trial court simply asking if the juror can be impartial." *See State v. Brooks*, 868 P.2d 818, 823 (Utah Ct. App. 1994), *aff'd*, 908 P.2d 856 (Utah 1995). Thus, the State argues that Juror 19's affirmation that she could act impartially established that she was not actually biased.

¶29     While we disagree with the State's contention that the subject juror's affirmation of impartiality alone is enough to establish her lack of bias, we agree that Sessions cannot establish actual bias here. *See Wach*, 2001 UT 35, ¶ 33 ("It is not enough if a juror believes that he or she can be impartial and fair . . . [because a] statement made by a

---

[4]Although Sessions states that the trial court's questioning of Juror 19 suggests that she was part of the group with concerns about sexual assault cases, that is not clear from the record. Some of the jurors questioned prior to Juror 19 expressed preconceived notions about sexual assault cases. In contrast, Juror 19 indicated that she would have no issue serving on the jury.

juror that she intends to be fair and impartial loses much of its meaning in light of other testimony and facts which suggest a bias." (internal quotation marks omitted)); *see also State v. King* (*King IV*), 2008 UT 54, ¶¶ 8, 47, 190 P.3d 1283 (remanding for further factual findings regarding two jurors' potential bias despite their response that they could be impartial although they had "prior experiences" with a similar crime); *Boyatt,* 854 P.2d at 552–53 (holding that the trial court adequately probed the potential bias of prospective jurors who had been victims of similar crimes by (1) asking "each juror about his or her experience, including the type of burglary involved . . . and whether the case had been resolved," (2) asking "the venire as a group if any harbored ill will toward the criminal justice system because of the burglaries," and (3) asking "the potential jurors if, as a result of the burglary they had experienced, they felt they could not be fair and impartial"). In the present case, the only inquiry after Juror 19's disclosure about her niece was the trial court's question whether she could serve fairly and impartially despite the experience. The voir dire on this point did not establish impartiality, as argued by the State; but it also did not establish actual bias, as Sessions contends.[5]

¶30    Sessions also claims that Juror 23 was biased and provided ambiguous answers when asked if she could render a fair verdict. First, Sessions asserts that Juror 23 "had heard of this case and had seen a picture of Sessions in the paper." The trial court questioned Juror 23 as follows:

> The Court:  Do you think you could be fair and impartial. We'll explore for just [a] second. [Juror 23]?
>
> [Juror 23]:  Yes, sir.

---

[5]In addition, Sessions challenges Juror 19 under rule 18(e)(7) of the Utah Rules of Criminal Procedure, which provides that jurors may be removed for cause if they have "served on a trial jury which has tried another person for the particular offense charged." However, this rule applies only to the "particular offense" and "does not refer to a juror who has merely tried another similar case against someone else charged with a similar offense." *State v. Dixon*, 560 P.2d 318, 319 (Utah 1977). Thus, Juror 19's service as a juror on an "assault case," tried fifteen to twenty years earlier, does not violate rule 18(e)(7).

The Court: You had some issues?

[Juror 23]: I don't believe I have issues. No, sir.

The Court: Do you think you could serve on this jury and be fair and impartial?

[Juror 23]: I think I could.

The Court: Had you heard anything about this case?

[Juror 23]: I believe I've seen a picture in the paper, but I do not recall any of the article.

The Court: Have you formed any type of opinion about the guilt or innocence of the defendant based on anything you've seen?

[Juror 23]: No. Not based on—time just looking at the picture here.

The Court: What about anything?

[Juror 23]: I don't recall reading the article. So I did not know that that's what this was connected to.

¶31     Although Juror 23's exposure to publicity might have raised a question of potential bias, we are convinced that it was dispelled by the court's rehabilitative inquiry. Further questioning revealed that Juror 23 had not read the article and was not sure it related to Sessions's case. Under these circumstances, the trial court adequately explored Juror 23's exposure to pretrial publicity and assured that she could serve fairly and impartially. *See State v. Sales*, 537 P.2d 1031, 1033 (Utah 1975) (holding that the jurors' exposure to pretrial publicity did not warrant reversal where the trial court determined "they conscientiously believed that they could set it aside and act without bias or prejudice as fair and impartial jurors").

¶32    Sessions's second argument that Juror 23 was actually biased is based on the fact that Juror 23 raised her hand when the court asked, "One or more witnesses in this case may be law enforcement personnel. Do any of you feel that the testimony of someone working in law enforcement is more or less believable than anybody else?" Neither the court nor the parties sought any further information from Juror 23 on this topic, and Sessions does not claim that trial counsel was ineffective for failing to do so. Rather, Sessions asserts that Juror 23's response shows actual bias against Sessions because her answer indicates that she was not impartial. The State disagrees, arguing that Juror 23's answer could just as easily indicate a tendency to find someone working in law enforcement less believable than any other person. The Utah Supreme Court "has defined 'impartiality' as 'a mental attitude of appropriate indifference.'" *See State v. Olsen,* 860 P.2d 332, 334 (Utah 1993) (quoting *State v. Bishop*, 753 P.2d 439, 451 (Utah 1988), *overruled on other grounds by State v. Menzies*, 889 P.2d 393 (Utah 1994)). Juror 23's response suggests that she is not indifferent on the credibility of law enforcement personnel, but does not indicate whether her partiality favors the State or Sessions. Thus, as with respect to Juror 19, the voir dire of Juror 23 did not establish that she was actually biased against Sessions.

¶33    Sessions has shown the potential, rather than the actual, bias of Jurors 19 and 23. This is not enough to meet the prejudice prong of either ineffective assistance of counsel or plain error. In *King IV*, 2008 UT 54, 190 P.3d 1283, the Utah Supreme Court held that to establish an ineffective assistance claim based on the failure of counsel to remove jurors who revealed potential bias during voir dire, the defendant "must demonstrate actual prejudice," which "[i]n this setting, . . . is synonymous with actual juror bias."[6] *Id.* ¶ 39. There, the record on appeal was insufficient to determine whether the jurors were actually biased and the *King IV* court, on its own motion, remanded to the trial court

---

[6]The appellate history of the *King* case is complicated. This court initially decided that the trial court plainly erred by not further questioning two jurors whose impartiality had been called into doubt. *See State v. King* (*King I*), 2004 UT App 210, ¶ 27, 95 P.3d 282. The supreme court reversed, and remanded to this court to consider King's ineffective assistance claim. *See State v. King* (*King II*), 2006 UT 3, ¶ 26, 131 P.3d 202. We then concluded that trial counsel performed deficiently and presumed prejudice. *See State v. King* (*King III*), 2006 UT App 355, ¶ 16, 144 P.3d 222. The supreme court again reversed that decision in *King IV*, 2008 UT 54, 190 P.3d 1283, which is the focus of our discussion.

under rule 23B of the Rules of Appellate Procedure, for further proceedings to resolve that issue. *See id.* ¶ 40 ("[R]ule 23B(e) of the Utah Rules of Appellate Procedure offers the most effective method to determine if [the jurors] were actually biased."); *see also* Utah R. App. P. 23B(a) (providing that a party in a criminal appeal "may move the court to remand the case to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel").

¶34    Despite that decision, Sessions has not sought a rule 23B remand in this case.[7] Furthermore, we decline to exercise our discretion to remand on our own motion. *See generally King IV*, 2008 UT 54, ¶ 41 (noting that "rule 23B allows an appellate court to remand for a hearing on its own motion"); *see also* Utah R. App. P. 23B(a) ("Nothing in this rule shall prohibit the court from remanding the case under this rule on its own motion at any time if the claim has been raised and the motion would have been available to a party."). Unlike the defendant in *King IV*, Sessions has not alleged that "trial counsel was deficient for failing to see to it that further inquiry [during voir dire] took place." *See King IV*, 2008 UT 54, ¶ 39. Thus, this is not a case like *King IV* where the defendant claimed that "any deficiencies in the record [were] caused by counsel's alleged ineffective assistance." *Id.* ¶ 43. Rather, Sessions argues only that the answers that were provided during voir dire reveal that Jurors 19 and 23 were actually biased. From the record before us, we can reject that argument because the voir dire responses do not establish the actual bias of either Juror 19 or Juror 23. Thus, remand is not necessary to decide the issues raised on appeal in this case.

¶35    Because Sessions has not shown that a biased juror participated in finding him guilty, he cannot prevail on his claim that trial counsel was ineffective in not successfully removing Jurors 19 and 23 with peremptory challenges. For the same reason, Sessions cannot prevail on either his plain error or ineffectiveness of counsel claims relating to the failure to reinstate the two peremptory challenges when Jurors 19 and 23 were reseated. Thus, we reject Sessions's claim that he is entitled to a new trial.

---

[7]Sessions cites *King II*, 2006 UT 3, 131 P.3d 202, for the proposition that "trial courts have a duty to see that the constitutional right of an accused to an impartial jury is safeguarded," but does not otherwise discuss the *King* decisions. *See id.* ¶ 16 (internal quotation marks omitted); *see also supra* note 6 (explaining the appellate history of the *King* case).

## II. The Trial Court's Reference to Appeal

¶36    Sessions next claims that the trial court inappropriately informed the jury that the case would be appealed. During trial counsel's cross-examination of a State witness, trial counsel interrupted while the witness was speaking. The trial court instructed trial counsel to "[l]et her finish the answer." The court then explained the importance of not talking over one another during trial, stating, "You know in ordinary speech, we step all over each over. You know what this record will look like when it goes up on appeal with that?" Defense counsel responded, "Right," added his own comment about "the record," and made no objection to the trial court's statement. Sessions argues that the trial court plainly erred by referring to a future appeal, and that trial counsel was ineffective in not seeking a mistrial and by compounding the error with an additional reference to the record.

¶37    In support of his position, Sessions relies on *Caldwell v. Mississippi*, 472 U.S. 320 (1985). There, during argument in the penalty phase of a capital murder trial, the prosecutor argued that the defense "would have you believe that you're going to kill this man and they know . . . that your decision is not the final decision. My God, how unfair can you be? Your job is reviewable." *Id.* at 325. The trial court in *Caldwell* overruled defense counsel's objection to the statement and expressed its own view, stating, "I think it proper that the jury realizes that it is reviewable automatically as the death penalty commands." *Id*. The prosecutor then proceeded, arguing, "[T]he decision you render is automatically reviewable by the Supreme Court. Automatically . . . ." *Id.* at 325–26. On appeal, the Supreme Court held that "it is unconstitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* at 328–29. In reaching that conclusion, the high court stressed the "qualitative difference of death from all other punishments." *Id.* at 329 (internal quotation marks omitted).

¶38    However, Sessions also cites a noncapital case, *United States v. Fiorito*, 300 F.2d 424 (7th Cir. 1962). In *Fiorito*, the trial court stated to the jury, "That's why we have a court of appeals, they will reverse me if I'm wrong. This is not the final judgment, there is a court of appeals to review me and a Supreme Court to review them." *Id.* at 426. The jury convicted the defendants, and they appealed. *Id.* at 425. The Seventh Circuit reversed based on the trial court's statements, reasoning that "[s]uch dilution of the

final responsibility of the jury as was thus inferred as permissible to the jury in its determination of the verdict is prejudicial to a defendant." *Id.* at 427.

¶39    Unlike these cases, the comments by the trial court in the present case did not dilute or minimize the jury's responsibility to determine the verdict. Rather, the innocuous comment was made in the context of explaining the importance of protecting the official record of the proceedings by not speaking simultaneously. It was a brief reference in the context of a three-day trial, and unlike the comments in *Caldwell* and *Fiorito*, it did not imply that the juror's role should be taken lightly. *See Caldwell*, 427 U.S. at 328–29; *Fiorito*, 300 F.2d at 427. Under these circumstances, we are convinced that any possible error was harmless and that, therefore, Sessions cannot prevail on a theory of either ineffective assistance of counsel or plain error.

### III. Imposition of Sentence

¶40    Finally, Sessions contends that the trial court plainly erred in not sentencing him pursuant to an "amended aggravated sexual assault statute which became effective prior to Sessions['s] conviction and sentencing." Sessions also argues that trial counsel was ineffective in failing to inform the trial court of the available sentencing options.

¶41    Although Utah Code section 76-5-405 was amended in 2009, the State argued that Sessions should be sentenced under the prior version of the code. Both versions of the statute contain a presumptive sentence for aggravated sexual assault of fifteen years to life, but permit the court to depart from that sentence in the "interests of justice." *Compare* Utah Code Ann. § 76-5-405 (2008), *with id.* (Supp. 2012). When Sessions committed the crime, the downward departures available at sentencing were limited to ten years to life or six years to life. *See id.* § 76-5-405(3)(b) (2008) (current version at *id.* § 76-5-405(3)(a), (4)(a) (Supp. 2012)). Before sentencing, the Utah Legislature amended the statute to permit a sentence of three years to life under certain circumstances. *See id.* § 76-5-405(5)(a) (Supp. 2012).

¶42    Although the record reflects that the trial court was aware of both versions of the statute, Sessions argues that the trial court did not understand that it could sentence him to six years to life because neither party specifically mentioned that this option was

available under both statutes. Sessions concedes this issue was not preserved, but asks us to consider it under both plain error and ineffective assistance of counsel.[8]

A. Plain Error

¶43    Sessions first argues that the trial court erred in not sentencing him pursuant to "the rule of lenity, which provides that a defendant is entitled to the benefit of the lesser penalty afforded by an amended statute made effective prior to sentencing." *See State v. Kenison*, 2000 UT App 322, ¶ 8, 14 P.3d 129 (internal quotation marks omitted). For example, where the legislature reduces a penalty from a felony to a misdemeanor between the time a defendant commits a crime and sentencing, the trial court cannot impose a sentence higher than the maximum available under the amended version of the statute. *See id*. In this case, the maximum sentence under both versions of the statute remained the same, and both contained downward adjustments to ten years to life or six years to life. *Compare* Utah Code Ann. § 76-5-405 (2008), *with id.* (Supp. 2012). However, the amended statute provided the sentencing court the additional option to impose a sentence of three years to life in some cases.[9] *See* Utah Code Ann. § 76-5-405(5)

---

[8]Sessions also argues that this issue can be raised for the first time on appeal under rule 22(e) of the Utah Rules of Criminal Procedure, which allows for an illegal sentence to be corrected at any time. However, because the ten-year sentence imposed on Sessions was permissible under either version of the statute and there is no claim that the trial court did not have jurisdiction, the sentence was not illegal. *See State v. Thorkelson*, 2004 UT App 9, ¶ 15, 84 P.3d 854 (stating that an illegal sentence is generally "(1) where the sentencing court has no jurisdiction, or (2) where the sentence is beyond the authorized statutory range").

[9]The current statute differentiates between "rape, object rape, forcible sodomy, or forcible sexual abuse;" "attempted rape, . . . object rape, or . . . forcible sodomy;" and "attempted forcible sexual abuse." *See* Utah Code Ann. § 76-5-405(1) (Supp. 2012). Under the current statute, the default sentence is fifteen years to life for a completed act; ten years to life for attempted rape, object rape, or forcible sodomy; and six years to life for attempted forcible sexual abuse. *See id.* § 76-5-405(2). The downward departure of three years to life is available only if the defendant is convicted of "attempted forcible sexual abuse" and the downward departure is "in the interests of justice." *See id.* § 76-5-405(1)(c), (2)(c), (5)(a).  The version of the statute under which Sessions was convicted

(continued...)

(Supp. 2012). Indeed, Sessions's counsel argued that the trial court should impose the newly added three-years-to-life sentence.

¶44    The trial court declined that invitation, instead indicating, "the only reduction [it was] contemplating [was] to 10 years . . . based on [Sessions's] lack of any criminal history." Because both versions of the statute allow a sentence of ten years to life, the trial court did not need to resolve the issue of which version of the statute applied. Despite Sessions's claim that the trial court was not aware of the six-year option, the court "received and reviewed the pre-sentence report" that includes a statement that the original statute allows this option. *See State v. Partida*, 2010 UT App 104U, para. 3 (mem.) (holding that where a trial court referenced a PSI at sentencing and the PSI mentioned mitigating factors, the trial court was "presumed to have considered" those factors (citing *State v. Helms*, 2002 UT 12, ¶ 13, 40 P.3d 626)). We also reject Sessions's speculation that the trial court may not have been aware that the six-year-to-life option was still available under the amended statute. Absent some indication in the record to the contrary, we will presume that the trial court knew the law. *See State v. Kelsey*, 532 P.2d 1001, 1005 (Utah 1975) ("The trial court is presumed to know the law."); *see also State v. Moa*, 2012 UT 28, ¶ 35, 282 P.3d 985 ("[A]s a general rule, we presume that the district court made all the necessary considerations when making a sentencing decision." (citing *Helms*, 2002 UT 12, ¶ 11)). Thus, we conclude that the trial court was adequately informed of the available options when it made its sentencing decision and, therefore, did not err in sentencing Sessions to ten years to life.

¶45    Because we have concluded that there is nothing in the record to suggest that the trial court did not know of the available sentencing options, Sessions was not prejudiced by any alleged deficiency in not bringing the six-years-to-life option to the court's attention. Therefore, Sessions cannot prevail on his ineffective assistance of counsel claim. *See generally Strickland v. Washington*, 466 U.S. 668, 697 (1984) ("If it is

---

[9](...continued)
made no such distinction and provided only one default sentence of fifteen years to life, with downward departures of ten or six years to life "in the interests of justice." *See id.* § 76-5-405(2)(a), (3)(b) (2008). Thus, it is unclear whether a three-year-to-life sentence would have been available under the facts of this case because the jury did not distinguish between an attempted act and a completed act in rendering its verdict.

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

CONCLUSION

¶46    Sessions has failed to establish that he was prejudiced by any alleged plain error or ineffectiveness of counsel in the jury selection process. Therefore, he cannot prevail on those claims. In addition, the trial court's brief reference to the importance of maintaining a proper record for appeal was harmless. Finally, we presume the trial court was aware of the sentencing options available. As a result, trial counsel was not deficient for not calling the sentencing options to the trial court's attention, and the trial court did not err in imposing sentence.

¶47    Affirmed.

_____
Carolyn B. McHugh, Judge

-----

¶48    WE CONCUR:

_____
J. Frederic Voros Jr., Judge

_____
Stephen L. Roth, Judge