**UNITED STATES of America**

**v.**

**Thomas A. BUTTS.**

**Crim. No. 85–00029–P.**

United States District Court,
D. Maine.

March 20, 1986.

Richard S. Cohen, U.S. Atty., William H. Browder, Asst. U.S. Atty., Portland, Me., for plaintiff.

Richard S. Emerson, Jr., Portland, Me., for defendant.

GENE CARTER, District Judge.

## ORDER GRANTING DEFENDANT'S MOTION FOR A NEW TRIAL

"To deny a defendant the right to tell his story from the stand dehumanizes the administration of justice. I cannot accept a decision that allows a jury to condemn to death or imprisonment a defendant who desires to speak, without ever having heard the sound of his voice." *Wright v. Estelle,* 572 F.2d 1071 at 1078 (5th Cir.1978) (Godbold, J., dissenting).

On December 6, 1985, Defendant was convicted by a jury of possession of a credit card stolen from the mail in violation of 18 U.S.C. § 1708. He was represented in that trial by attorney Jura Burdinik. Defendant now seeks a new trial under Fed.R. Crim.P. 33, asserting that Burdinik's representation before and during trial was ineffective, thus rendering the trial unfair.[1] Defendant contends that Burdinik's representation was inadequate in three major respects: (1) that he did not call Defendant as a witness although Defendant had consistently wanted to testify in his own behalf, thus defeating his right to do so; (2) that he did not subpoena witnesses who Defendant thought would testify on his behalf; and (3) that he did not hire a private investigator to locate witnesses or determine the facts of the case.

An evidentiary hearing on the motions, at which both Defendant and Burdinik testified, was held on March 6, 1986. After careful consideration of that testimony, the written and oral presentations of both parties, and its own recollection of the trial, at which it presided, the Court concludes that the interests of justice require a new trial. *See* Fed.R.Crim.P. 33.

Defendant testified at the motion hearing that from his first meeting with his attorney, he had expressed his desire to testify in his own behalf and to tell his version of the facts. Specifically, he wanted to explain that he thought the person who had given him the credit card to use was its rightful holder, and he did not, therefore, know that it was stolen. Defendant testified, and Attorney Burdinik agreed, that Defendant's proposed testimony at trial was the recurrent theme of all of their meetings. Burdinik tried repeatedly to dissuade Defendant from testifying for he thought that his story was not plausible and that Defendant would be severely impeached by his prior criminal record. Despite these admonitions, Defendant persisted in wanting to testify and made that known time and again at each meeting with counsel. Burdinik testified that he thought that Defendant had acceded to his advice and agreed not to testify.

On the day of trial, Defendant again told Burdinik that he wanted to testify. In fact, throughout the trial he fully expected to testify. Near the end of the trial, Burdinik approached counsel table and told Defendant that he was not going to put him on. Although there was not much discussion in what both parties described as a tense, hurried moment, it is clear that Defendant again stated that he wanted to testify. Burdinik did not ask for a recess or do anything else that might have facilitated a more meaningful discussion with his client. Rather, after their brief interchange, satisfied that Defendant had reluctantly acquiesced to his advice, Burdinik rested the Defendant's case. Defendant complained bitterly to Burdinik about his

---

1. Defendant was represented at trial by Mr. Burdinik as Court-appointed counsel. The verdict was returned on December 6, 1985. On December 11, 1985, the Defendant filed *pro se* a series of post-trial motions. On December 20, 1985, Mr. Burdinik filed a motion to withdraw as counsel, representing that he had been dismissed by the Defendant. On January 6, 1986, the Court denied Mr. Burdinik's motion to withdraw and appointed Richard S. Emerson, Esq. to represent Defendant on the post-trial motions

as co-counsel with Mr. Burdinik. A hearing was held on the motion for new trial on March 6, 1986, at which, on inquiry by the Court, Mr. Burdinik pressed his motion to withdraw as counsel and the motion was granted, there being no objection. Defendant was represented at the hearing by Mr. Emerson. As a result of the decision which the Court reaches herein on the motion for new trial, those remaining post-trial motions not previously acted upon by the Court are rendered moot.

actions and Burdinik responded that he thought Defendant would have hurt his case more than he could have helped it.

█ The Court finds that Defendant wanted very much to testify and that his will in that respect was overborne by counsel. Burdinik had obviously determined from the outset that he did not want Defendant to testify. He did not try to contact any of the corroboratory witnesses suggested by Defendant, and, as far as the Court can see, did little, if anything, by way of preparation other than try to convince Defendant not to testify.[2] Defendant's only access to the Court was through his counsel. Thus, whether it was through miscommunication in the heat of the moment or, as seems far more likely to the Court, through counsel's flagrant disregard of Defendant's wish to testify, Defendant was denied the opportunity to present his testimony.

In a very recent case reversing a District Court's decision not to reopen the evidence to let the defendant testify, the Court of Appeals for the Fifth Circuit aptly described the importance of this opportunity under circumstances quite similar to those presented here:

Without regard to whether there is a constitutional right to testify and the extent to which it might apply, we find that Walker's testimony in his own defense is of such inherent significance that the district court, as a matter of fairness, should have permitted him to testify. Walker had not testified at all, and his testimony would be of particular interest to the fact finder because he would be testifying as the alleged active participant in the activities which were the focus of the trial. *Where the very point of a trial is to determine whether an individual was involved in criminal activity, the testimony of the individual himself must be considered of prime importance.*

... [I]t was obvious what Walker (who had not already testified) would testify about—namely, his version of his own conduct and statements as portrayed by the government's witnesses and asserted by the prosecution as constituting the offenses charged. These were matters that were, in the vast majority of instances, not covered by the testimony of any of the defense witnesses. It is and was unmistakable, undisputed, and obvious that Walker's testimony would have been highly relevant and significant and in no meaningful sense cumulative. Plainly, Walker's testimony had "exculpatory potential" and "would have enhanced appellant's defense." [*United States v.*] *Larson,* 596 F.2d [759] at 779 [8th Cir.1979].

Apart from what appellant would have testified to, his presence on the stand would have afforded him the opportunity to have the jury observe his demeanor and judge his veracity firsthand. As one Circuit Judge has noted, "The facial expressions of a witness may convey much more to the trier of facts than do the spoken words." *United States v. Irvin,* 450 F.2d 968, 971 (9th Cir.1971) (Kilkenny, J., dissenting). We conclude that the character of this "eyeball testimony," as a matter to be weighed in determining whether the district court should have permitted Walker to testify on Monday, is also a factor falling on the side of the appellant.

*United States v. Walker,* 772 F.2d 1172 (5th Cir.1985)[3] (footnote omitted) (emphasis added).

The Court believes that Defendant Butts' proposed testimony on his own behalf is of great inherent significance for the same reasons. Although the motion made here is for a new trial rather than to reopen the evidence, the same considerations of justice

---

**2.** For example, the record shows that Burdinik did no investigation, did not file a trial memorandum, as required by Local Rule 23, and did not file a request for jury instructions.

**3.** This Court does not share the reluctance of the *Walker* court to label as a constitutional right a defendant's giving of testimony in his own behalf in a criminal proceeding against him. *See infra* at 1148.

and fairness come into play. The Court is aware that new trials are to be granted only sparingly and then only where there would be a miscarriage of justice. *United States v. Indelicato*, 611 F.2d 376 (1st Cir. 1979). In this case, with his timely motion for a new trial, Defendant apprised the Court of his dilemma with expedition after the verdict had been rendered and he had dismissed his counsel. As indicated by its adoption of the Fifth Circuit's analysis of the importance of a defendant's testimony, this Court feels that deprivation of the opportunity to testify is indeed a miscarriage of justice requiring the granting of a new trial.

Both parties in this case have approached this issue as a deprivation of the effective assistance of counsel. As such, they, and in particular the Government, have treated it as governed by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. In *Strickland* the Supreme Court considered the standards for determining when ineffective assistance of counsel requires that a criminal judgment be overturned on a petition for a writ of *habeas corpus* under 28 U.S.C. § 2255. The Court explained:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.... The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 691, 104 S.Ct. at 2067, 80 L.Ed.2d at 696 (citations omitted).

The Court does not find *Strickland* applicable to this case. The Court has no difficulty finding on the record before it that Attorney Burdinik's representation of Defendant in this case was woefully deficient and that, in fact, his performance fell "outside the wide range of professionally competent assistance." *Id.* 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. The Court does not feel, in light of one of the consequences of that ineffectiveness, that it must now undertake to evaluate the prejudice to the defense occasioned by counsel's conduct. Counsel's performance here is troublesome not just for its possible impact on the reliability of the verdict, i.e., for its Sixth Amendment implications. Additionally, counsel's actions in not permitting Defendant the opportunity to testify affected the very fairness of the trial process itself by resulting in the Defendant being deprived of the opportunity to testify. Cognizant of the fact that the Supreme Court has never explicitly recognized a due process right of the defendant to testify in his own behalf, *Nix v. Whiteside*, — U.S. —, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), this Court, following recent dictum in its own circuit, *United States v. Systems Architects, Inc.*, 757 F.2d 373 (1st Cir.1985), joins those Courts which have done so. *See, e.g., United States v. Bifield*, 702 F.2d 342, 349 (2d Cir.), *cert. denied* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); *Alicea v. Gagnon*, 675 F.2d 913, 922 (7th Cir. 1982); *Ashe v. North Carolina*, 586 F.2d 334, 336, n. 3 (4th Cir.1978); *cert. denied* 441 U.S. 966, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979); *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115, 119 (3d Cir.1977). This Court, as others have, finds particularly persuasive the dissenting opinion of Judge Godbold in *Wright v. Estelle*, 572 F.2d 1071, 1074 (5th Cir.1978). Judge Godbold identified the origin of the right to a fair trial in the Fifth Amendment guarantee of due process, the Fourteenth Amendment right to a fair trial, and the Sixth Amendment guarantees of the defendant's right to meet and deny the accusation against him. *Id.* at 1075–76.

■ This Court considers a defendant's right to testify in a criminal proceeding against him so basic to a fair trial that its infraction can never be treated as harmless error, which is in essence the inquiry required to be made by the second, prejudice to the defense, prong of *Strickland*. *See*

*Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Also adopting this rationale, Judge Godbold cogently explained why it was error to apply the harmless error test set forth in *Chapman* to the denial of the right to testify:

> Because we cannot truly judge the effect of the defendant's being denied the right to take the stand, and because we should be concerned with protecting both the right to choose whether to testify and the substance of the testimony, I suggest that the majority's reliance on *Chapman* is entirely misplaced. To apply such an outcome-determinative analysis at worst denigrates the position of the individual with respect to his own defense and trial and at best exhibits an unthinking paternalism toward criminal defendants.

*Wright v. Estelle,* 572 F.2d at 1081–82.

■ This Court is satisfied that ineffective assistance of counsel which results in a deprivation of the defendant's right to testify transcends conventional Sixth Amendment analysis and that prejudice is sufficiently proven, if not to be presumed from, the resulting denial of the defendant's right to testify. The crux of the matter cannot be put more succinctly nor eloquently than by Judge Godbold:

> In the narrow world of the courtroom the defendant may have faith, even if mistaken, in his own ability to persuasively tell his story to the jury. He may desire to face his accusers and the jury, state his position, and submit to examination. His interest may extend beyond content to the hope that he will have a personalized impact upon the jury or gain advantage from having taken the stand rather than to seek the shelter of the Fifth Amendment. Or, without regard to his impact on the jury, his desire to tell "his side" in a public forum may be of overriding importance to him. Indeed, in some circumstances the defendant, without regard to the risks, may wish to speak from the stand, over the head of judge and jury, to a larger audience. *It is not for his attorney to muzzle him.*

*Wright v. Estelle,* 572 F.2d at 1078 (emphasis added). In conclusion, this Court finds that the interest of justice requires that Defendant, who was deprived by his counsel of his opportunity to testify at his trial, be afforded a new trial.

The Court keenly regrets the inconvenience and extra burden occasioned to the Government, through no fault of its own, by this ruling. Government's counsel prepared the case and conducted himself throughout the trial in professionally laudatory fashion. Despite the fact that he is in no way responsible for the unfairness of the proceedings, the interest of justice requires that the Government must be put to its proof once again. The Government must share with the Court, on such occasions as this, the burden and inconvenience of assuring the integrity of the criminal trial process. Only thus can both of them, and the public, be assured that they are all, in truth, engaged in the pursuit of justice.

Accordingly, it is ORDERED that Defendant's motion for a new trial be, and it is hereby, GRANTED.