*This opinion is subject to revision before final publication in the Pacific Reporter.*

**2014 UT 44**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent,*

*v.*

RONNIE CYRIL SESSIONS,
*Petitioner.*

No. 20120975
Filed October 21, 2014

Third District, Salt Lake
The Honorable Deno G. Himonas
No. 091902780

On Certiorari to the Utah Court of Appeals

Attorneys:

Sean D. Reyes, Att'y Gen., Ryan D. Tenney, Asst. Att'y Gen.,
Salt Lake City, for respondent

Joan C. Watt, Brittany D. Enniss,
Salt Lake City, for petitioner

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1 Ronnie Sessions was convicted of aggravated sexual assault and domestic violence in the presence of a child arising out of his attack on his wife in the presence of the couple's four-year-old daughter. At voir dire, counsel for Sessions used all five of his peremptory challenges on female members of the venire. When the prosecution objected, Sessions failed to give nondiscriminatory explanations for two of the strikes upon the trial court's request. The trial court then reinstated those two jurors but did not restore

the two peremptory challenges Sessions used to strike them. On appeal, the court of appeals upheld Sessions's conviction on the ground that he failed to show that he was prejudiced by his attorney's allegedly deficient performance or by the trial court's decision to reinstate the two jurors.

¶2 Sessions challenges the court of appeals' decision, arguing that his counsel's performance was deficient and gives rise to a presumption of prejudice, and that the loss of two peremptory challenges was plain error. We disagree and thus affirm.

I

¶3 In March 2009, Sessions and the victim, his wife at the time, were living together with their three children, the victim's mother, and the victim's adult child from a previous relationship. Around this time, Sessions began to suspect his wife of infidelity and decided to confront her. An argument ensued, which ultimately escalated and became physical.

¶4 During the assault, with the couple's four-year-old daughter in the room, Sessions kicked the victim out of the couple's bed and began choking her. He then threatened to rape and kill her, forcibly removed her clothing, and sexually assaulted her by violently thrusting his fist into her vagina. Sessions then left the room and his wife called 911. The victim's adult son heard her screaming and came into the bedroom where he found her naked and bleeding on the floor.

¶5 The victim was examined by a sexual assault nurse later that night. The nurse found injuries indicative of attempted strangulation. She also discovered injuries consistent with the victim's account of Sessions sexually assaulting her with his fist.

¶6 Sessions was charged with one count of aggravated sexual assault and two counts of domestic violence in the presence of a child. During jury selection, juror 19 indicated that her niece had been sexually assaulted as a minor. She also noted that she had served as a juror in a criminal assault case fifteen years earlier. When asked if she could set aside her feelings and render a "true and correct" verdict, she indicated that she could. Neither Sessions nor the trial judge conducted any further inquiry, and Sessions did not challenge juror 19 for cause.

¶7 The trial judge then asked the potential jurors whether any of them "[felt] that the testimony of someone working in law enforcement is more or less believable than anybody else." Juror 23 raised her hand, but no one inquired further or asked any other questions about the issue. Later, juror 23 also told the trial judge that she had seen pretrial publicity that may have been related to the case, but stated that she could be fair and impartial and that she could not be certain the publicity she saw concerned this case.

¶8 After striking eighteen potential jurors for cause, Sessions and the State passed on the remainder, including jurors 19 and 23. Each side was then allocated five peremptory challenges. Sessions used all five of his challenges on women, including jurors 19 and 23.

¶9 The State raised a *Batson* objection, asserting discrimination on the basis of gender in defense counsel's actions in using all of his peremptory challenges to strike women from the jury. The trial judge asked Sessions's counsel if he realized that he did not "have the ability to strike people based upon their gender," and counsel answered, "I did not do that." The trial judge then asked counsel to provide gender-neutral explanations for each strike. He did so for all but jurors 19 and 23.

¶10 As to juror 19, counsel told the trial judge that he had drawn "two arrows down" next to juror 19's name on his notes, but could not remember why. "Something she said" had bothered him, but he could not remember what it was and thus he struck her based on a "gut feeling." Counsel had no explanation for striking juror 23. When subsequently pressed by the court, counsel appeared to concede that he was unaware of any legal prohibition on striking potential jurors on the basis of gender, but insisted he had not done so.

¶11 The trial court concluded that Sessions had challenged jurors 19 and 23 in a manner inconsistent with the equal protection standard recognized in *Batson v. Kentucky*, 476 U.S. 79 (1986), and stated that it would be willing to entertain a motion for mistrial or alternative relief. The State declined to request a mistrial, but suggested instead that the court reinstate jurors 19 and 23 to the panel. Counsel for Sessions did not object or ask the court to restore the two peremptory challenges he had lost. Jurors 19 and 23 were

reinstated and ultimately sat on the jury, which convicted Sessions on all counts.

¶12 Sessions appealed, arguing that his trial counsel was ineffective for using his peremptory challenges in a discriminatory manner, for being unable to articulate nondiscriminatory reasons for striking jurors 19 and 23, and for failing to object to the trial court's remedy of reinstating the jurors. *See State v. Sessions*, 2012 UT App 273, ¶ 1, 287 P.3d 497. In addition, Sessions argued that that the loss of two peremptory challenges warranted a presumption of prejudice.

¶13 The court of appeals affirmed, holding that (a) the loss of two peremptory challenges did not warrant a presumption of prejudice, and (b) Sessions had not shown he was actually prejudiced by his counsel's allegedly deficient performance or by the trial court's alleged errors. *See id.* ¶¶ 23–35. Sessions filed a petition for certiorari, which we granted.

¶14 On certiorari, we review not the underlying decision of the district court, but the ultimate decision of the court of appeals — a decision that merits no deference in our analysis. *See State v. Verde*, 2012 UT 60, ¶ 13, 296 P.3d 673.

II

¶15 Because Sessions's objections were not preserved at trial, he proceeds under principles of ineffective assistance of counsel and plain error. *See State v. Sessions*, 2012 UT App 273, ¶¶ 13–14, 287 P.3d 497. On the ineffective assistance claim, Sessions challenges a range of trial counsel's actions in connection with the exercise of his peremptory challenges. In asserting plain error, Sessions assails the trial court's decision to reinstate jurors 19 and 23 and its failure to sua sponte restore the peremptory challenges used to strike them.

¶16 We affirm. First, we conclude that Sessions has largely failed to establish the objective deficiency of his counsel's performance, and in any event that he has not shown that any prejudice arose from any arguable deficiency or that there is a basis for a presumption of prejudice. Second, we hold that Sessions has failed to establish the elements of plain error.

## A. Ineffective Assistance of Counsel

¶17 To prevail on his claim for ineffective assistance of counsel, Sessions has the burden of demonstrating (1) that his counsel rendered a demonstrably deficient performance that fell below an objective standard of reasonable professional judgment, and (2) that counsel's performance resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 691–92 (1984); *see also Bundy v. Deland*, 763 P.2d 803, 805–06 (Utah 1988) (restating and applying the *Strickland* test). Sessions has failed to carry his burden. For the most part, he has failed to demonstrate objectively deficient performance. And in any event, he has also failed to establish actual prejudice or any basis for presumed prejudice.

### 1. Deficient Performance

¶18 An attorney's performance is deficient under *Strickland* if it can be shown to have fallen "below an objective standard of reasonableness." *Nicholls v. State*, 2009 UT 12, ¶ 37, 203 P.3d 976 (quoting *Strickland*, 466 U.S. at 688). This standard is met where it is established that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* (internal quotation marks omitted).

¶19 Sessions asserts four counts of deficient performance by his trial counsel: (1) not knowing that gender-based jury strikes are prohibited by law, (2) exercising the peremptory challenges in a discriminatory fashion, (3) failing to object to the loss of two challenges and not moving for a mistrial, and (4) failing to state a gender-neutral justification for striking jurors 19 and 23 and to take the notes necessary to be prepared to do so.

¶20 None of these assertions of deficiency is meritorious—save perhaps the last one. We hold that Sessions has failed to carry his burden of establishing objective deficiency on the first three counts. As to the fourth, we acknowledge the arguable merits of Sessions's claim but ultimately reject it based on a lack of proof of prejudice.

¶21 First, Sessions is right that there is some evidence that his counsel did not know that *Batson* had been extended to gender. When the trial judge pressed counsel on the matter, counsel appeared to concede his unawareness of the law on this issue. But Sessions is wrong to equate this apparent lack of knowledge with deficient performance. *Strickland* assesses the objective sufficiency

of counsel's performance, not the subjective adequacy of counsel's knowledge.

¶22 A lawyer's lack of knowledge is not alone enough to amount to deficient performance.[1] The operative inquiry is whether the "actual representation would still have been within the range of objectively reasonable representation," even if counsel had been "aware of [the law]." *Bullock v. Carver*, 297 F.3d 1036, 1049 (10th Cir. 2002) (internal quotation marks omitted).

¶23 Sessions's claim fails under that standard. Even if defense counsel had known that *Batson* had been extended to discrimination on the basis of gender, he reasonably could still have decided to employ his peremptory strikes in the same manner.[2] And again, the question under *Strickland* is the objective reasonableness of counsel's actions, not the subjective adequacy of his knowledge of the law.

---

[1] The federal caselaw has embraced this principle quite consistently. *See, e.g., Bullock v. Carver*, 297 F.3d 1036, 1048 (10th Cir. 2002) (stating that "an attorney's unawareness of relevant law at the time he made the challenged decision does not, in and of itself, render the attorney's performance constitutionally deficient"); *Harich v. Dugger*, 844 F.2d 1464, 1470 (11th Cir. 1988) (it is not enough to merely show that counsel was ignorant of the controlling law), *overruled on other grounds by Davis v. Singletary*, 119 F.3d 1471, 1482 (11th Cir. 1997).

[2] As noted below, after all, this is not a case where counsel's error takes the form of a blatant disregard of the principles in the *Batson* line of cases. Instead, the ultimate error is counsel's failure to articulate a gender-neutral justification for the use of a peremptory challenge in circumstances where such a justification was apparently available. *See infra* ¶¶ 29–30. Thus, we do not and need not decide the question addressed by some courts—whether the unlawful exercise of a peremptory challenge in blatant violation of *Batson* is per se ineffective assistance under step one of the *Strickland* inquiry. *See Winston v. Boatwright*, 649 F.3d 618, 630 (7th Cir. 2011) ("Deliberately choosing to engage in conduct that the Supreme Court has unequivocally banned is both professionally irresponsible and well below the standard expected of competent counsel.").

¶24 Second, Sessions has failed to establish the objective unreasonableness of counsel's implementation of his peremptory strikes. In light of the disturbing and violent acts that Sessions was accused of perpetrating against his wife, trial counsel could plausibly have concluded that women might have a tendency to be repulsed and thus inclined against him. And under *Batson*, counsel could legally have exercised his peremptory challenges with this concern in mind—even recognizing the possibility of a *Batson* objection and the potential difficulty of overcoming it—so long as he had a neutral, nondiscriminatory justification for this move. *See infra* ¶ 29. Running such a risk, moreover, could easily be deemed to fall within the broad bounds of objectively reasonable representation.

¶25 Sessions advocates for a rule that it is objectively unreasonable for a lawyer to advance a legally questionable position at trial. But there is no such rule under *Strickland*. Again, the standard is objective reasonableness, not legal acumen. And it might sometimes be strategically understandable for counsel to advance a legally questionable position at trial—to submit evidence of questionable admissibility, for example, in the hope that opposing counsel might not object, or that any objection might be overruled.

¶26 On this record there is no basis for concluding that counsel's attempt to strike jurors 19 and 23 was objectively unreasonable strategy. Counsel insisted that this move was based on a "gut feeling" having nothing to do with gender. And even if that attempt should have seemed likely to elicit a *Batson* challenge, that would not render counsel's attempt objectively unreasonable, since the *Batson* challenge was hardly inevitable, and the trial court's finding of discrimination was even less so. The fact that counsel's use of peremptories failed doesn't make the attempt objectively unreasonable.

¶27 Third, the failure to request a remedy other than reinstating the stricken jurors was likewise not objectively unreasonable. As a legal matter, the choice of remedies for a *Batson* violation is an open question, left to the trial court's discretion. *Batson* itself acknowledged that any of a range of apparent remedies—including that embraced below—each has its own strengths and weaknesses. *Batson v. Kentucky*, 476 U.S. 79, 89–100 (1986) (declining to prescribe a particular remedy because, among other things, the trial court is in the best position to fashion the appropriate remedy). And neither the Supreme Court nor this court has prescribed a one-size-fits-all remedy, leaving the matter instead to the discre-

tion of the trial judge in the circumstances of each individual case. With that in mind, we cannot say that it would be objectively unreasonable for trial counsel to acquiesce in a remedy that was embraced by the trial court and endorsed as an appropriate remedy under *Batson*—of reseating the jurors deemed improperly stricken by counsel.

¶28 Counsel could well have concluded that this remedy was as good as any other and that continuing to fight the issue would be strategically unwise. Alternatively, counsel could reasonably have decided that a jury including jurors 19 and 23 was preferable to an unknown jury that might be seated in further proceedings. Either way, there is no basis for a showing of objectively deficient performance with respect to the remedy of reseating jurors 19 and 23. *See Batson*, 476 U.S. at 99 n.24 (stating that one acceptable remedy is to "disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire").

¶29 That is not to say that all of Sessions's assertions of deficient performance are meritless. His last allegation of deficiency is at least plausible. It seems hard to identify an objectively reasonable basis for counsel's failure to provide a neutral, nondiscriminatory basis for striking jurors 19 and 23 when asked by the trial judge. Where such a basis seems apparent on the record, *see supra* ¶¶ 6–7, it may be objectively unreasonable for counsel to fail to articulate it.

¶30 The State's principal response is the assertion that counsel cannot be faulted for mere failure to take careful notes at trial. On that narrow point we agree: A trial lawyer might reasonably decide to keep his eyes focused on members of the venire instead of buried in a notebook. But that isn't really the question. The problem is not just that counsel failed to take notes; it is that he made no attempt to offer a neutral justification for apparently discriminatory peremptories in the face of further questioning by the court and in light of an apparent basis for a response in the record. It is at least arguable that a reasonably competent attorney under these circumstances would expect a *Batson* challenge and thus be prepared to give a neutral justification—if not from his notes then from his memory.

## 2. Prejudice

¶31 That said, Sessions's ineffective assistance claim fails under the prejudice prong of the *Strickland* test. This prong requires a showing of "a reasonable probability that, but for counsel's [alleged] errors, the result of the proceeding would have been different." *State v. Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082 (internal quotation marks omitted). In a case like this one involving alleged ineffective assistance in a failure to provide neutral grounds for the exercise of a peremptory challenge, prejudice is defined in terms of proof of "actual juror bias." *State v. King*, 2008 UT 54, ¶ 39, 190 P.3d 1283.

¶32 Sessions claims to have established prejudice on either of two grounds: (a) under a supposed presumption of prejudice under this court's decisions in *Randle v. Allen*, 862 P.2d 1329 (Utah 1993), and *Carrier v. Pro-Tech Restoration*, 944 P.2d 346 (Utah 1997), or as a matter of federal law; and (b) based on evidence of actual prejudice. We find no legal basis for a presumption of prejudice and no evidence of actual juror bias, and thus affirm.

### (a) Presumed Prejudice

¶33 Our decisions in *Randle* and *Carrier* established a prophylactic presumption of prejudice as an element of the standard of proof under Utah Rule of Civil Procedure 47. But those decisions are rooted in an interpretation of our rules of procedure. They have no application to the federal law question of the elements of a claim for ineffective assistance of counsel. And on that matter of federal law, we are bound by federal precedent; we have no license to override that precedent with an extension of the above-cited caselaw.

¶34 In *Randle*, a civil action for wrongful death with one plaintiff suing three defendants, the trial court allocated each party four peremptory challenges under Utah Rule of Civil Procedure 47. 862 P.2d at 1332.[3] The ultimate allocation was effectively unequal because the defense side ended up with a total of twelve challenges while the plaintiff was left with only four. And the

---

[3] The trial court permitted each party to exercise three challenges under rule 47(e) (the maximum allowable under that rule), and one challenge against the entire panel under rule 47(b), which reserves an additional challenge for alternate jurors. *Id.*

plaintiff objected, asserting that codefendants should be treated as a single party under rule 47 except in case of substantial controversy among them. We agreed. *See id.* at 1333. In so doing, we presumed that, in the circumstances of the *Randle* case, the disparity in challenges was prejudicial. *Id.* (explaining that while a disparity between sides in the number of peremptory challenges does not itself establish prejudice, the size of the disparity was significant enough to sustain a presumption of prejudice). That holding, however, was purely a matter of interpretation of rule 47; it had nothing to do with the federal question of the elements of a claim for ineffective assistance of counsel.

¶35 The *Carrier* case was similar. In that case the court of appeals granted a personal injury plaintiff a new trial based on a twelve-to-four disparity between defendants' and plaintiff's peremptory challenges. *Carrier*, 944 P.2d at 349, 354. We affirmed, finding no substantial controversy between codefendants and concluding that the disproportionate allotment of peremptory challenges gave rise to a presumption of prejudice. *See id.* As in *Randle*, however, we did so within the context of rule 47.

¶36 That context makes all the difference. *Randle* and *Carrier* pertain to the applicable standard of proof under a state rule of procedure. In interpreting rule 47, it was our prerogative to conclude that harm is presumed upon a threshold showing of a disproportionate allocation of peremptory challenges.

¶37 But that does not hold for the standard of proof for claims of ineffective assistance of counsel. That is a matter of federal law, on which we are bound to follow Supreme Court precedent.[4] And the presumption of prejudice advanced here by Sessions is incompatible with the structure and analysis of the Supreme Court's decision in *Strickland*.

---

[4] The unequal allotment of peremptory challenges in *Randle* and *Carrier* is also distinguishable from the circumstances of this case on a factual ground: The allotment of peremptory challenges in *Randle* and *Carrier* was unequal from the outset, while in this case the inequality came about only as a result of counsel's actions in the course of trial. *See Randle*, 862 P.2d at 1332; *Carrier*, 944 P.2d at 349.

¶38 As we noted in *Parsons v. Barnes*, "[t]he requirement that a defendant affirmatively prove prejudice [under *Strickland*] is grounded in the very purpose of the Sixth Amendment right to counsel—'to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding.'" 871 P.2d 516, 522 (Utah 1994) (quoting *Strickland*, 466 U.S. at 691-92). Thus, at *Strickland* step two, the focus is on prejudice in terms of the ultimate *outcome of the proceeding*. The analysis, in other words, concerns the question whether a "'conviction or . . . sentence resulted from a breakdown in the adversary process that renders the *result* unreliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687) (emphasis in *Parsons*).

¶39 *Strickland* also highlighted circumstances in which such prejudice may be presumed: (1) cases involving "[a]ctual or constructive denial of the assistance of counsel," (2) cases in which the government has "interfere[d] with counsel's assistance," and (3) cases where counsel acted with "an actual conflict of interest." *See Strickland*, 466 U.S. at 692.Yet even these exceptions were rooted in a consideration of the ultimate effect on the outcome of the underlying proceeding. As to the first two exceptions, the *Strickland* court emphasized that "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice" because "[p]rejudice in these circumstances is *so likely* that case-by-case inquiry into prejudice is not worth the cost." *Id.* (emphasis added). And as to the third exception, although the court emphasized that a breach of a duty of loyalty involves "the most basic of counsel's duties," it still concluded that "[p]rejudice is presumed only if the defendant demonstrates that counsel '*actively represented conflicting interests*' and that 'an actual conflict of interest *adversely affected his lawyer's performance*.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348 (1980) (emphases added)).

¶40 Notwithstanding the above, Sessions notes that *Strickland* was decided two years before *Batson*. And he urges an interpretation of *Strickland* that extends its conception of presumed prejudice to encompass counsel's advancement of a trial strategy contravening the principles of *Batson*. In so doing he cites recent decisions embracing that concept, chief among them the Seventh Cir-

cuit's decision in *Winston v. Boatwright*, 649 F.3d 618, 632 (7th Cir. 2011).[5]

¶41 We reject Sessions's argument on two grounds. First, the cited authority is easily distinguishable. The cases relied on by Sessions involved a verdict rendered by a tainted jury—a jury assembled in violation of the equal protection principles recognized in *Batson*.[6] This case is different. It arises in a very different circumstance, in which the alleged *Batson* violation was objected to by opposing counsel and remedied by the trial court. *See supra* ¶¶ 9–11. So even if an unremedied *Batson* violation could be viewed as sufficiently "structural" to sustain a presumption of prejudice under *Strickland*,[7] that principle would not apply here. At most the question here is the impact of the loss of a procedural right to a peremptory challenge, and the loss of that right is not a "structural" problem "affecting the framework within which the trial proceeds," or "transcend[ing] the criminal process." *Arizona v. Fulminante*, 499 U.S. 279, 310–11 (1991) (internal quotation

---

[5] *See also Ex parte Yelder*, 575 So. 2d 137, 139 (Ala. 1991); *In re Commitment of Taylor*, 679 N.W.2d 893, 899–900 (Wis. Ct. App. 2004).

[6] *See Winston*, 649 F.3d at 623–24 (noting that the claim of ineffective assistance in that case arose out of defense counsel's acts in using peremptory challenges to strike men from the jury— "because he thought that the female jurors would be more critical of the victim"); *Yelder*, 575 So. 2d at 139; *Taylor*, 679 N.W.2d at 899–900.

[7] *See Winston*, 649 F.3d at 628 (adopting a concept of presumed prejudice encompassing "structural errors"—those "persist[ing] throughout the proceeding and relat[ing] to the framework in which a trial proceeds"); *Neder v. United States*, 527 U.S. 1, 8 (1999)). *But see United States v. Kehoe*, 712 F.3d 1251, 1255 n.4 (8th Cir. 2013) (noting the Eighth Circuit's disagreement with the *Winston* formulation); *Young v. Bowersox*, 161 F.3d 1159, 1161 (8th Cir. 1998) (refusing to adopt a "structural" error framework, limiting presumed prejudice to the general kinds of presumed prejudice identified in *Strickland*, and otherwise holding that "an error by counsel does not warrant setting aside the judgment of a criminal proceeding . . . if the error had no effect on the judgment").

marks omitted). As the United States Supreme Court "repeatedly has stated," "the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial." *Georgia v. McCollum*, 505 U.S. 42, 57 (1992). Thus, even if an unremedied *Batson* violation might conceivably be deemed to sustain a presumption of prejudice under *Strickland*, the mere loss of a peremptory challenge as a remedy for a *Batson* violation is a different matter altogether.

¶42 Second, Sessions fails to carry his burden of making the case for presumed prejudice under controlling precedent, particularly *State v. Arguelles*, 921 P.2d 439 (Utah 1996). In *Arguelles* we declined to extend the *Strickland* categories of presumed prejudice to a case in which counsel had prevented a defendant from exercising the right to testify in his own behalf at trial. *Id.* And in so doing we rejected the analysis set forth in *United States v. Butts*, 630 F. Supp. 1145 (D. Me. 1986). *Butts* held that the interference with a client's right to testify was a matter too pervasive and fundamental to be subjected to a requirement of proof of actual prejudice under *Strickland. Id.* at 1148. It concluded, specifically, that such interference "is troublesome not just for its possible impact on the reliability of the verdict," but for affecting "the very fairness of the trial process itself by resulting in the Defendant being deprived of the opportunity to testify," a matter of "great inherent significance" that the court deemed a "miscarriage of justice requiring the granting of a new trial." *Id.* at 1147–49.

¶43 We rejected the *Butts* formulation. In so doing, we reiterated the categories of presumed prejudice identified in *Strickland* while also noting the possibility of extending those categories to circumstances where it is "unnecessary" to "pursue a case-by-case inquiry to weigh actual prejudice." *Arguelles*, 921 P.2d at 442 (internal quotation marks omitted). And we declined to extend these principles of presumed prejudice to a case involving counsel's interference with a defendant's right to testify. *Id.* We held, specifically, that Arguelles had "not argue[d] that any of these circumstances exist[ed] in the present case," but instead had relied only on the framework of the *Butts* opinion. *Id.*

¶44 Sessions's argument fails on similar grounds. Under *Strickland* and *Arguelles*, the defendant must make a showing of either an actual effect on the outcome of the underlying case or a basis for a presumption of prejudice like that recognized in the courts'

opinions—such as a high likelihood of an impact on the result with an attendant difficulty of case-by-case analysis, or an active conflict of interest adversely affecting a lawyer's performance. *See Arguelles*, 921 P.2d at 442.[8]

¶45 Sessions's claim to presumed prejudice fails under this standard. Like Arguelles, Sessions has "not argue[d] that any of these circumstances exist in the present case." *Arguelles*, 921 P.2d at 442. Thus, he offers no basis for deeming the remedial loss of his peremptory challenges an event "so likely" to affect outcomes that "case-by-case inquiry into prejudice is not worth the cost." *Strickland*, 466 U.S. at 692. And he likewise provides no reason to conclude that his counsel's actions were comparable to an active conflict of interest affecting his lawyer's performance.[9] We accordingly conclude that Sessions has failed to carry his burden of establishing any basis for presumed prejudice in the remedial loss of two of his peremptory challenges.

---

[8] *See also Jackson v. Herring*, 42 F.3d 1350, 1361 (11th Cir. 1995) (concluding that the prejudice inquiry under *Strickland* asks whether there is a reasonable probability that "the result of the proceeding would have been different," and not simply whether errors "infect[ed] [the] entire trial with error of constitutional dimensions" (internal quotation marks omitted)); *Strong v. Roper*, 2011 WL 2600241, at *15 (E.D. Mo. 2011) (holding that the failure to raise *Batson* objection does not entitle defendant to presumption of prejudice under *Strickland*, and that he must instead show "reasonable probability that the outcome of the trial would have been different" (internal quotation marks omitted)).

[9] This is not to say that we read *Strickland*'s categories of presumed prejudice as a closed universe. We do not. And on that point, we reject a handful of decisions that appear to read *Strickland* in this way. *See, e.g., Glover v. Miro*, 262 F.3d 268, 275 (4th Cir. 2001) (stating that absent presumed prejudice under one of the three circumstances—in this case, denial of counsel—"defendants must show actual prejudice under *Strickland*"). But we do require more than a general invocation of the concept of presumed prejudice. It is Sessions's burden to identify a basis for extending the *Strickland* categories of presumed prejudice to this case, and he has failed to carry that burden.

(b) Evidence of Actual Bias

¶46 Sessions contends that actual prejudice exists because jurors 19 and 23 were "objectionable" and "bias[ed]." As evidence, Sessions cites juror 19's statements during voir dire that she had previously served on a criminal assault jury fifteen years earlier, and that her niece was once sexually assaulted. He also points to juror 23 raising her hand when asked during voir dire whether she felt the testimony of law enforcement was "more or less believable than anybody else." And he notes that juror 23 indicated that she watched "Law and Order type shows," and felt the defendant in those shows was generally guilty.

¶47 This evidence does not establish actual bias. None of the cited statements constitute grounds for removal for cause. At most they might suggest a *potential* for bias, or a ground for defense counsel to prefer that these jurors not be seated. But that is not enough. *See King*, 2008 UT 54, ¶¶ 19, 47 (holding that "potential bias" does not constitute prejudice; defendant must "show that his counsel's actions prejudiced him because those actions allowed the seating of an actually biased juror").

¶48 Ultimately, both jurors asserted that they could render a "true and correct," "honest," and "fair and impartial" verdict.[10] Such assertions of impartiality do not by themselves foreclose a finding of prejudice. *See State v. Wach*, 2001 UT 35, ¶ 33, 24 P.3d 948. But Sessions's failure to provide any contrary evidence does. Neither juror was questioned further by defense counsel. And when they were questioned further by the trial court, it apparently was convinced of their impartiality. *See id*. ¶¶ 29–31 (potential bias can be rebutted by questioning from the court). Absent any indication from these jurors' statements or conduct during or after their service raising doubts about their impartiality, we see no basis for concluding that Sessions has established prejudice by showing actual bias.[11] And we affirm the rejection of Sessions's ineffective assistance claim on that basis.

---

[10] *See Irvin v. Dowd*, 366 U.S. 717, 723 (1961) (holding that a juror is impartial "if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court").

[11] Moreover, the Supreme Court has found no actual bias where the evidence of bias was much stronger than that presented here.

## B. Plain Error

¶49  To prevail on his plain error claim, Sessions must establish that the trial court committed an error, that the error was obvious, and that the error was prejudicial. *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). Sessions asserts plain error in the remedy invoked by the trial court for the *Batson* violation. Specifically, he claims plain error in the reinstatement of jurors 19 and 23 and in the failure to restore the lost peremptory challenges.

¶50  Sessions has not met his burden of establishing any one of the required elements of plain error, let alone all three. First, there was no error (obvious or otherwise) because the trial judge chose a legally appropriate remedy in reinstating jurors 19 and 23 and in declining to restore Sessions's lost challenges. Sessions cites no case embracing a single, one-size-fits-all remedy for violations of *Batson*. The case law, in fact, is to the contrary. *See supra* ¶ 27. Recognizing that any of a range of remedies each presents both upsides and downsides, the courts generally have left the matter to the discretion of the trial court on a case-by-case basis. *See United States v. Walker*, 490 F.3d 1282, 1295 (11th Cir. 2007) (declining to mandate a particular remedy because trial courts are in the best position to fashion a remedy in a particular case). We reinforce that conclusion here. We find no error—and certainly no clear error—in the decision to restore jurors who were discriminatorily stricken from the jury and in the failure to restore the lost peremptories.[12]

---

*See Patton v. Yount*, 467 U.S. 1025, 1029–30 (1984) (holding that trial court did not commit manifest error by finding jurors impartial, despite eight jurors admitting that, due to pretrial publicity, "at some time [prior to trial] they had formed an opinion as to [defendant's] guilt"); *see also United States v. Pennell*, 737 F.2d 521, 529–30 (6th Cir. 1984) (holding that there was inadequate evidence of actual bias where five jurors received threatening, late-night phone calls telling them to find the defendant guilty, and one juror stated that the phone calls might influence her judgment in the case). If the evidence in *Patton* and *Pennell* did not establish actual bias, then the evidence here, without more, certainly doesn't.

[12] The notion of restoring discriminatorily exercised peremptory challenges seems to present a particularly troubling downside—of eliminating any cost of discrimination in jury selection, and thus

¶51 Second, Sessions has not established prejudice. He has shown that he lost two peremptory challenges, but that alone is not enough to establish prejudice. "[T]here is no freestanding constitutional right to peremptory challenges," and thus the loss of such a challenge is "not a matter of federal constitutional concern." *Rivera v. Illinois*, 556 U.S. 148, 157 (2009). Thus, the mere loss of a peremptory challenge is not a "structural error"—a denial sustaining a presumption of harm. *See id.* at 160–61. Such errors are established "only when the error necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 160 (internal quotation marks omitted). And the denial of a state-provided peremptory challenge "does not . . . constitute an error of that character." *Id.* at 161.

¶52 Thus, to establish prejudice for the loss of his peremptories, Sessions would have to prove actual prejudice. And he would have to do so in the same manner described above in connection with his ineffective assistance claim—by establishing that an actually biased juror sat on the panel that convicted him. That he has failed to do, for reasons detailed above.

¶53 Sessions's plain error claim therefore fails on all three elements, as he has not established error, has not proven that any such error was obvious, and has not proven prejudice. We accordingly affirm.

_____

of establishing a perverse incentive going forward. *See Peetz v. State*, 180 S.W.3d 755, 760–61 (Tex. App. 2005) (declining to restore lost peremptory strikes because it would "foster greater discrimination" by providing "no consequence for [discriminatory] strikes."). Although we do not foreclose the possible viability of this remedy in appropriate circumstances, we cannot possibly find clear error in the rejection of that remedy in this case.