**2016 UT App 56**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PAUL DUBRAE WALDOCH,
Appellant.

Memorandum Decision
No. 20140851-CA
Filed March 24, 2016

Sixth District Court, Kanab Department
The Honorable Marvin D. Bagley
No. 111600055

J. Bryan Jackson, Attorney for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Memorandum
Decision, in which JUDGE J. FREDERIC VOROS JR. concurred. JUDGE
MICHELE M. CHRISTIANSEN concurred in part and concurred in
the result in part, with opinion.[1]

BENCH, Senior Judge:

¶1     Paul Dubrae Waldoch appeals his convictions of one
count of object rape, a first-degree felony, and two counts of
forcible sexual abuse, each a second-degree felony. We affirm.

¶2     Waldoch first asserts that the evidence was insufficient to
support a finding of penetration and therefore could not support
a conviction for object rape. "In assessing a claim of insufficiency

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

of the evidence, we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury" and will "reverse only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." *State v. Nielsen*, 2014 UT 10, ¶ 30, 326 P.3d 645 (citations and internal quotation marks omitted).

¶3      A person commits object rape when the person,

> without the victim's consent, causes the penetration, however slight, of the genital or anal opening of another person who is 14 years of age or older, by any foreign object, substance, instrument, or device, including a part of the human body other than the mouth or genitals, with intent to cause substantial emotional or bodily pain to the victim or with the intent to arouse or gratify the sexual desire of any person.

Utah Code Ann. § 76-5-402.2(1) (LexisNexis Supp. 2014). Utah case law defines "penetration" as "entry between the outer folds of the labia." *State v. Simmons*, 759 P.2d 1152, 1154 (Utah 1988).

¶4      At trial, the victim testified that Waldoch put his finger "into" her vagina and further explained, "He stuck his finger inside of me, finger or fingers, I'm not sure. . . . [H]e kept sticking his finger inside me and rubbing me really hard." Likewise, in her statement in the police report, the victim emphasized, "He *did penetrate me* with his fingers . . . ." The physician's assistant (PA) who examined the victim after the assault testified that the victim reported "manual" vaginal penetration, specifically, that Waldoch's "[f]ingers penetrated [her] vaginal area." Although the PA's report indicated that the victim had "hesitated to come in reporting because there was no

actual penetration," the PA clarified at trial that the statement "was made in reference to lack of penile penetration." The PA pointed out that on the emergency room form he had circled "vaginal penetration" and then handwritten next to it "with hand." A nurse who participated in the exam and collected DNA evidence testified that she observed an abrasion on the outside of the victim's labia and another on the inside of her labia. The nurse testified that the victim told her Waldoch had "penetrated" her vagina with his hand and further testified that the victim's injuries were consistent with the victim's description of the assault. And on the forensic report form, the nurse indicated that there was penetration "by hand to vagina." The contrary evidence emphasized by Waldoch—the fact that he was excluded as a contributor to a saliva sample taken from the victim's neck, the inconsistencies in the PA's report regarding penetration, and the testimony of Waldoch's expert witness that the victim's injuries were inconsistent with penetration[2]—does not make the evidence supporting the verdict so "inconclusive or inherently improbable that reasonable minds *must* have entertained a reasonable doubt" regarding the penetration element. *See Nielsen*, 2014 UT 10, ¶ 30 (emphasis added) (citation and internal quotation marks omitted). Rather, that evidence presented a credibility question for the jury.[3]

---

2. Waldoch's expert opined, "Penetration occurs once you are through the hymenal rim into the vagina" and then explained, "There's no injury and no evidence—no physical evidence of any penetration in the hymen or in the vagina at all on the exam." But because the expert defined penetration more narrowly than does Utah law, the expert's testimony that the victim's injuries were inconsistent with penetration is not particularly helpful.

3. Waldoch's argument suggesting that the victim's injuries were consistent with consensual activity likewise fails to convince us

(continued…)

¶5      Waldoch next argues that the trial court erred in allowing a husband and wife to serve together on the jury[4] and that the trial court did not adequately admonish the jury not to discuss the case. These issues were not preserved for our review. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 ("As a general rule, claims not raised before the trial court may not be raised on appeal."). Thus, we decline to address them except to the extent that Waldoch has asserted that his claims fall under an exception to the preservation rule—plain error, ineffective assistance of counsel, or exceptional circumstances. *See State v. Cram*, 2002 UT 37, ¶ 4, 46 P.3d 230.

¶6      Although Waldoch mentions these exceptions in passing, his analysis of how those exceptions might apply to this case is inadequate. *See State v. Thomas*, 961 P.2d 299, 304 (Utah 1998) ("It is well established that a reviewing court will not address arguments that are not adequately briefed."). As to his plain error argument, he merely asserts that the trial court should not have allowed the husband and wife to serve together but fails to explain why this alleged error should have been obvious to the trial court. His ineffective assistance and exceptional circumstances arguments are likewise cursory: he baldly asserts that allowing a husband and wife to serve on a jury together is "a rare procedural anomaly" and that trial counsel erred "in allowing a husband and wife [to] serve together on the jury without objecting or insisting that the jury be admonished more completely," but he does not develop those assertions or cite supporting authority. *See* Utah R. App. P. 24(a)(9) (indicating

---

(…continued)

that the jury could not have found lack of consent beyond a reasonable doubt based on the victim's testimony.

4. The wife was impaneled as an alternate juror and was ultimately dismissed before jury deliberations.

that an appellant's brief "shall contain the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on").

¶7      In any event, Waldoch has failed to establish that he was prejudiced as a result of the husband and wife serving together or the trial court's failure to admonish the jury before short recesses, *see* Utah R. Crim. P. 17(k) (requiring the trial court to admonish the jury at "each recess of the court" "not to converse among themselves or to converse with, or suffer themselves to be addressed by, any other person on any subject of the trial" and "not to form or express an opinion thereon until the case is finally submitted to them"). The trial court admonished the jury not to talk about the case before a ten-minute break during jury selection, before a lunch break following jury selection, in the opening jury instructions, at the end of the first day of trial, and before a lunch break on the second day of trial. Only the opening jury instructions included an admonition not to prematurely form an opinion. The trial court did not admonish the jury at all prior to several short recesses during the course of the two-day trial or at the close of evidence.

¶8      While the trial court did not strictly comply with rule 17(k), we are not convinced that prejudice should be presumed in this case, as Waldoch urges. *See State v. Maestas*, 2012 UT 46, ¶ 52, 299 P.3d 892 ("Automatically granting a new trial for any instance where the court fails to admonish the jury before a recess fails to take into account whether, and to what extent, the jury has been properly admonished by the court in other instances. If the admonition is not given but the harm that it was designed to forestall never occurs, it would be pointless to order a new trial simply to have the [admonition] given." (alteration in original) (citation and internal quotation marks omitted)). The jurors were given a complete and detailed admonition in the

opening jury instructions and were instructed on several additional occasions in the course of the two-day trial not to discuss the case among themselves. They were also informed that the same instruction would apply to "any other recess." In the course of the two-day trial, "the jury would have had little opportunity to forget prior admonitions," *see id.* ¶ 53, and Waldoch has pointed to "nothing in the record to indicate that the failures to admonish played any role in the [jurors'] conduct," *see id.* ¶ 54. Likewise, he has failed to establish that he was prejudiced by the husband and wife sitting together, both because there is nothing to suggest that they ignored the admonitions they were given or influenced one another and because only one spouse actually sat on the final jury. *See State v. Sessions*, 2014 UT 44, ¶¶ 50, 52, 342 P.3d 738 (explaining that to establish prejudice in the context of jury selection, a defendant must show that a juror was "actually biased"); *accord State v. King*, 2008 UT 54, ¶ 47, 190 P.3d 1283.

¶9    Finally, Waldoch asserts that the prosecutor committed misconduct by inappropriately appealing to the jury's emotions. *See State v. Campos*, 2013 UT App 213, ¶ 52, 309 P.3d 1160. He also asserts that the trial court should have admonished the jury to disregard statements by the prosecutor appealing to emotion. These issues were not preserved for appeal,[5] and Waldoch has again failed to adequately brief them in the context of plain error or ineffective assistance of counsel. Thus, we decline to consider Waldoch's prosecutorial misconduct claims.

¶10    We conclude that the evidence was sufficient to support a finding of penetration and therefore to support the jury's guilty

---

5. Although defense counsel asked to approach the bench in the middle of the prosecutor's closing argument, no objection was made on the record and there is no record of the discussion at the bench.

verdict on the object rape charge. We further determine that Waldoch's arguments regarding the trial court's admonitions to the jury, jury selection, and alleged prosecutorial misconduct are unpreserved and inadequately briefed. We therefore affirm his convictions.

———————

CHRISTIANSEN, Judge (concurring):

¶11    I agree with the majority that the evidence presented at trial was sufficient to support Waldoch's object rape conviction, that Waldoch was not prejudiced by the trial court's insufficient admonishments before recesses or the presence of a married couple on the jury, and that Waldoch's challenge to the prosecutor's closing argument was not preserved. I write separately, however, to explain my belief that the trial court plainly erred and that trial counsel performed deficiently during jury selection by failing to inquire during voir dire whether the husband and wife, who were both seated on the venire, could independently reach impartial verdicts if selected as jurors in this case.

¶12    Article I, section 12 of the Utah Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant the right to a trial by an impartial jury. Moreover, "[p]rinciples of due process also guarantee a defendant an impartial jury." *Ristaino v. Ross*, 424 U.S. 589, 595 n.6 (1976). And Utah Code section 77-1-6 affords defendants in criminal prosecutions the right "[t]o a speedy public trial by an impartial jury." Utah Code Ann. § 77-1-6(1)(f) (LexisNexis 2012). Since "[j]uror impartiality is a mental attitude of appropriate indifference," *State v. Woolley*, 810 P.2d 440, 443 (Utah Ct. App. 1991) (citation and internal quotation marks omitted), adequate voir dire is necessary to determine each juror's mental attitude and ability to independently reach a verdict. "The purpose of voir dire of a jury panel is 'to provide a tool for counsel and the

court to carefully and skillfully determine, by inquiry, whether biases and prejudices, latent as well as acknowledged, will interfere with a fair trial if a particular juror serves in it.'" *Salt Lake City v. Tuero*, 745 P.2d 1281, 1283 (Utah Ct. App. 1987) (quoting *State v. Ball*, 685 P.2d 1055, 1058 (Utah 1984)). While I would not presume as a matter of law that two jurors who are married might automatically vote together during deliberations, both jurors must be asked during voir dire whether they would make a decision independent of their spouse. *See Dunlap v. Commonwealth*, 435 S.W.3d 537, 585–86 (Ky. 2013) (trial court did not abuse its discretion in denying a motion to strike married jurors, because the married jurors serving together were not presumptively biased and the jurors' specific responses during voir dire did not indicate any partiality); *State v. Richie*, 960 P.2d 1227, 1243–44 (Haw. 1998) (married jurors are not presumptively disqualified from serving on juries but their independence should be assured through adequate voir dire); *Russell v. State*, 560 P.2d 1003, 1004 (Okla. Crim. App. 1977) (per curiam) ("Undoubtedly, married couples will be found that are unable to divorce one another's thoughts during a trial, but when voir dire uncovers no bias, partiality, or inability to form independent thought[, spouses] should not be excluded.").

¶13 Here, the record does not demonstrate that, after hearing from each member of the venire and learning that two members of the panel were married to each other, trial counsel or the court directed *any* inquiry during voir dire to the married jurors to determine whether this husband and wife could consider the case independently if selected to serve on the jury. It is true that the issue of whether married persons can serve on a jury has not been extensively litigated and that the partiality of married jurors is not presumed. However, the identification of any pre-existing relationships among the venire and determination of juror partiality seems to be an obvious enough line of inquiry during jury selection that the trial court plainly erred and that trial counsel performed deficiently in not following up with

further questions on this issue. In my view, both trial counsel and the trial court should have recognized that spouses serving together on a jury may lack impartiality vis-à-vis each other and thus should have conducted further voir dire to ensure that an impartial jury was seated in Waldoch's trial.

¶14    That said, I agree with the majority that Waldoch has failed to establish prejudice here, because only the husband sat on the final jury and there is nothing in the record to suggest that either spouse ignored the admonitions given by the trial court prior to jury deliberation or that the spouses actually influenced one another.

_____